A93A0590. McGUIRE v. RADISSON HOTELS
INTERNATIONAL, INC.
(435 SE2d 51)

COOPER, Judge.
Appellant brought suit against appellee, Denver/Robins Venture Partners, Ltd. ("Denver/Robins"), and Michael Myrick for injuries suffered when he was ejected from a lounge in the Radisson Inn Warner Robins by two bouncers. The lounge was owned by Denver/Robins which operated the Radisson Inn under a franchise agreement

with appellee. The bouncers were employed by Denver/Robins. Appellee moved the trial court for summary judgment on the theory that under the franchise agreement, which defined the relationship between appellee and Denver/Robins, there is no vicarious liability on the part of the franchisor for the alleged torts of the franchisee's employees. The trial court granted appellee's motion for summary judgment, and this appeal followed.

Appellant contends that genuine issues of material fact remain concerning the vicarious liability of appellee resulting from its right to control the daily operations of the Radisson Inn Warner Robins under the franchise agreement and from the extent to which appellee held the property out to the public as its own. " ' "To prevail on a motion for summary judgment . . . , a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. (Cits.)" (Cit.)' [Cit.]" *Gilbert v. Van Ord*, 203 Ga. App. 660 (417 SE2d 390) (1992). "Once he pierces the pleading of plaintiff and shows the court that one essential element, under any theory, is lacking and incapable of proof, the defendant-movant is entitled to summary judgment as a matter of law, irrespective of any issues of fact with regard to other essential elements. [Cits.]" *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981).

1. Appellant argues that the franchise agreement and the operating manual, which set forth in explicit detail the operational standards common to all Radisson franchises and which liberally permit appellee to inspect the Radisson Inn Warner Robins, are evidence of appellee's control over the method and manner of the hotel's daily operations and create a principal-agent relationship between appellee and Denver/Robins. Appellant contends that the following specific provisions from the franchise agreement and operating manual illustrate appellee's control over the operation of the hotel: (1) that Denver/Robins feature the name "Radisson" and other distinguishing service marks in appropriate locations so that the hotel is readily identified by the public as a part of the Radisson system; (2) that the promotion and advertising of the hotel conform to the form and manner set forth in the operating manual and any other design approved by appellee; (3) that Denver/Robins obtain prior written approval (which shall not be unreasonably withheld) as to the appointment of the general manager; (4) that employees who fail to comply with the hotel's stated rules be given an opportunity to correct their behavior before termination; and (5) that Denver/Robins use fair employment practices. In addition, appellant acknowledges that the franchise agreement requires Denver/Robins to indicate its independent ownership and relationship to appellee as a licensee under certain circum-

stances but argues that the only actual notice of this relationship to the public was a small plaque near the front desk of the hotel.

At the outset we recognize that "[a] franchise contract under which one operates a type of business on a royalty basis does not create an agency or a partnership relationship." *Arthur Murray, Inc. v. Smith*, 124 Ga. App. 51, 53 (2) (183 SE2d 66) (1971). The franchise agreement at issue provided for payment on a royalty basis. "Thus in order to impose liability on the franchisor for the [obligations] of the franchisee, it must be shown that: (a) the franchisor has by some act or conduct obligated itself to pay the debts of the franchisee; [cit.] or (b) the franchisee is not a franchisee in fact but a mere agent or 'alter ego' of the franchisor. [Cit.]" *Whitco Produce Co. v. Bonanza Intl.*, 154 Ga. App. 92, 93 (267 SE2d 627) (1980).

There is no evidence that appellee has represented that it would be liable for Denver/Robins obligations, and "[w]here the question of agency vel non rests upon a written document and inferences deduced therefrom, as in the instant case, the issue presented is a question of law for the trial court since construction of written contracts is exclusively for the judge. [Cits.] . . . Under Georgia law, '(t)he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf.' [Cit.] The historical test applied by Georgia courts has been 'whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract.' [Cit.]" *McMullan v. Ga. Girl Fashions*, 180 Ga. App. 228, 229 (2) (348 SE2d 748) (1986). However, "[t]he need for controls over the use of a trade name, in a franchise agreement authorizing such use, has generally been recognized. [Cits.]" *Buchanan v. Canada Dry Corp.*, 138 Ga. App. 588, 591 (226 SE2d 613) (1976). Thus, "a franchisor is faced with the problem of exercising sufficient control over a franchisee to protect the franchisor's national identity and professional reputation, while at the same time foregoing such a degree of control that would make it vicariously liable for the acts of the franchisee and its employees. [Cit.]" *McMullan*, supra.

Having reviewed the franchise agreement and the operating manual in their entirety, we do not find that an agency relationship was created. The franchise agreement sets forth the strict conditions under which the "Radisson" name can be used by Denver/Robins, and the operating manual outlines specific operating standards, not to permit appellee to direct or control the time, manner and method of performance of the daily operations of the franchise but as a means of achieving a certain level of quality and uniformity within the Radisson system. The agreement authorizes appellee to conduct periodic inspections of the hotel and an annual performance review to ensure

that Denver/Robins is "maintain[ing] the high standards and reputation of the System, the goodwill of the public, compliance with the provisions of [the Franchise] Agreement and the Operating Manual . . ." for the same reason. In addition, the franchise agreement provides as follows: "Licensee is an independent contractor. Neither party shall be considered an agent, legal representative, partner, subsidiary, joint venturer or employee of the other. . . . Licensee, will not use the name 'Radisson' or any similar name, in its corporate, partnership or trade name." Moreover, neither document suggests that appellee retain or exercise supervisory control over those persons hired by Denver/Robins to provide security in the lounge. See *Frey v. Pepsico, Inc.*, 191 Ga. App. 585 (1) (382 SE2d 648) (1989). Nor is there a jury question as to the existence of an agency or alter ego relationship based on Denver/Robins' use of appellee's name and insignia. Such use of the franchisor's name is inherent in any franchise agreement and is insufficient to raise a question of fact with respect to liability where the evidence demonstrates that the franchisor and franchisee are distinct and independent entities and that no agency exists. *Frey*, supra at 586-587; OCGA § 51-2-4. Cf. *Buchanan*, supra at 592.

2. Alternatively, appellant contends that the evidence demonstrates that appellee held out the hotel as its own and that appellant relied on such representations such that Denver/Robins is appellee's apparent or ostensible agent. "In order to recover under that theory, however, a plaintiff must present evidence that: '(1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury.' [Cit.]" *Holmes v. Univ. Health Svc.*, 205 Ga. App. 602, 603 (423 SE2d 281) (1992). "[T]he essence of the doctrine is that one represents that another is one's agent so that plaintiff justifiably relies on the care or skill of the apparent agent whose negligence causes the injury. It is not enough that plaintiff simply believe there is an agency relationship. There is an objective standard. The apparent principal must represent or hold out the apparent agent. Then, too, justifiable reliance must lead to the injury." *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507, 508-509 (361 SE2d 164) (1987). Appellant contends that the prominent signs on the hotel read "Radisson," not Denver/Robins; that there was no other sign which indicated that the hotel was owned or operated by any one other than the Radisson Company; and that the only reason he agreed to go to the lounge that evening was that he thought he was going to be in a place that was owned and operated by the same people who do the Radisson advertising and that the environment in the lounge would be of the quality suggested by the Radisson advertising. Since apparent or ostensible agency theory focuses on the actions of the principal rather than the agent, appellant's

focus on the signs bearing the "Radisson" name is misplaced because the display of any signs, though authorized by the franchise agreement, is controlled by Denver/Robins, not appellee. Thus, by displaying the "Radisson" name, Denver/Robins would be holding itself out as "Radisson" not the reverse. Appellant points to no other evidence of "holding out" on the part of appellee, and we have already determined that agency was not created by the franchise agreement. Therefore, appellant's argument that there was an apparent or ostensible agency relationship must fail.

Based on the foregoing, we find that appellee and Denver/Robins did not have a principal/agent relationship by virtue of the franchise agreement or the conduct of the parties. *Holiday Inns*, supra; *Holmes*, supra.

*Judgment affirmed. McMurray, P. J., concurs. Beasley, P. J., concurs in judgment only.*

DECIDED JULY 7, 1993 —
RECONSIDERATION DENIED JULY 29, 1993.

*Lucas & Bond, Kenneth E. Lucas, Adams & Adams, Charles R. Adams III*, for appellant.

*Chambless, Higdon & Carson, Mary M. Katz, Welch, Blender, Lubin, Shapiro & Sichel, Eric N. Welch*, for appellee.