A96A1213. BUTKUS et al. v. PUTTING GREENS INTERNATIONAL CORPORATION.
(475 SE2d 693)

SMITH, Judge.

Michael and Barbara Butkus brought suit against Putting Greens International Corporation (PGI) and Michael Stone to recover for damage caused to their property during Stone's attempt to install a putting green in their back yard. The trial court granted

PGI's motion for summary judgment, from which the Butkuses appeal.[1]

Michael Butkus (hereinafter referred to as "Butkus") testified on his deposition that he read in the Atlanta newspaper about a home putting green with an artificial surface. The newspaper stated that the surface material was manufactured by PGI, and it referred to Stone and printed his telephone number. Butkus called Stone and requested that Stone send him more information regarding such a putting green. Stone did so, and Butkus and Stone eventually contracted for the installation of a putting green at the Butkuses' home.

Stone was primarily a landscaper. Under the contract, in addition to installing the putting green, he was to grade and landscape the area and install a dog run, all pursuant to a design furnished to him by the Butkuses' landscape architect. The property sloped toward the street, and the back yard already held a pool surrounded by a decorative wall.

Stone began the work by bringing in several truckloads of dirt, which he dumped behind the existing wall, thereby raising the level of the terrain behind the wall. Stone then installed the putting green and completed the contract items with the exception of certain shrubs that were not available and minor cleanup. At Stone's request, Butkus paid him in full, and Stone promised to return to complete the remaining few items. Shortly after Stone left, the brick and cinder block wall collapsed into the pool, sending water from the pool against the house and into the basement, flooding it and causing extensive damage, in addition to damaging the pool and ruining the back yard, including the putting green. Extensive cleanup and rebuilding were necessary.

The Butkuses' homeowners' insurance carrier refused to pay for most of the damage, and Butkus looked to Stone for compensation. Although Stone represented to Butkus that he had insurance coverage, he refused to disclose the carrier's identity. The Butkuses eventually initiated this action against Stone and PGI, alleging that Stone was negligent and that PGI was vicariously liable for Stone's negligence because Stone was PGI's agent.

It is clear that Stone was neither an employee nor an actual agent of PGI. Stone owned and operated his own business, primarily operating as a landscaper; he purchased materials for the putting green from PGI. The Butkuses maintain, however, that PGI should be held liable for the alleged negligence of Stone under a theory of apparent agency. They contend that on the issue of apparent agency

---

[1] At PGI's request, the trial court entered an order granting final judgment to PGI, after which the Butkuses dismissed with prejudice their action against Stone.

material questions of fact remain for jury determination, and therefore the trial court erred in granting PGI's motion for summary judgment. We do not agree.

In order to recover under a theory of apparent or ostensible agency, a plaintiff must establish three elements: (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury. *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507, 508 (361 SE2d 164) (1987). Even if we assume that the damage to Butkus's property was caused by Stone's negligence, Butkus has not established, and cannot establish, either of the first two required elements.

The Butkuses admit that although Stone told them he was PGI's exclusive dealer in the Atlanta area, PGI made no actual representations to them. They argue, however, that PGI may be deemed to have held out Stone as its agent, relying principally on the brochure sent by Stone and the information in the newspaper, and that they justifiably relied on this in contracting with Stone. As to both the brochure and the newspaper article, a question of fact exists as to whether reference to Stone as a local dealer for PGI was authorized by PGI. We find, however, that these questions of fact are not material.

We have no doubt that Butkus believed that Stone was PGI's agent. To establish the required elements, however, it is not enough that the plaintiff *believe* that an agency relationship exists. *Watson v. Howard Johnson Franchise Systems*, 216 Ga. App. 237, 238 (453 SE2d 758) (1995). Neither is it sufficient that the *agent* represent his status as agent. It must be established that the *principal* held out the agent as its agent. *Fortune v. Principal Fin. Group*, 219 Ga. App. 367, 370 (465 SE2d 698) (1995).

The glossy brochure was printed by PGI for the purpose of marketing the putting green materials it manufactured. As printed by PGI, the brochure contained a blank space under the words: "Your local PGI dealer is." It is undisputed that Stone, and not PGI, inserted the name of his local business in that space by stamping it on the brochure before sending it to Butkus. But even assuming not only that Stone was authorized to stamp the brochure but that he actually *was* a "local dealer" or even the "exclusive" dealer of PGI products, that did not make Stone PGI's apparent agent or make PGI liable for Stone's torts.

Vicarious liability is premised upon a principal's right to control the time and manner of executing the work performed by the agent. *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. 740, 742 (435 SE2d 51) (1993). Absent strict liability or other special circumstances, manufacturers are not liable for the torts of those who deal in their

products. *Texaco v. Youngbey*, 211 Ga. App. 789 (440 SE2d 533) (1994) (Texaco not liable for gas station employee's firing shots at plaintiff despite dealership relationship). Under Georgia law, even franchisors are not liable for the torts of franchisees. See, e.g., *McGuire*, supra (hotel chain not liable for local hotel bouncers injuring plaintiff despite franchise relationship). Even if the Butkuses relied upon a belief that Stone was a local or even an exclusive dealer of PGI products, if Stone was negligent in landscaping the Butkuses' yard and installing the putting green, the Butkuses would not be justified in attributing liability for any such negligence to PGI merely because it manufactured some of the materials used by Stone in performing his work.

That Butkus's reliance was not justified is further supported by his testimony at deposition that he knew that Stone had never before installed a putting green. Because he was concerned about Stone's lack of experience, he requested references and received only landscaping references. Despite his concern, however, he never contacted PGI.

*Jester v. Hill*, 161 Ga. App. 778 (288 SE2d 870) (1982), relied upon by the Butkuses, is distinguished on its facts. There, Hill, an insurance agent, represented to Jester that he was authorized by an insurance carrier to issue a policy that covered Jester immediately. In fact, he was not so authorized, but nothing in the brochure or application provided by the carrier contradicted this statement and this Court held that Jester justifiably relied on it. In this case, the materials and information furnished by PGI, even if authorized, described Stone only as a dealer of its products. The trial court did not err in granting summary judgment to PGI.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 4, 1996.

*Michael T. Thornton*, for appellants.

*Swift, Currie, McGhee & Hiers, James B. Hiers, Jr., Julia M. B. Haffke, Barnes, Browning, Tanksley & Casurella, Jeffrey G. Casurella*, for appellee.