A03A2032. COLDWELL BANKER REAL ESTATE
CORPORATION v. DeGRAFT-HANSON et al.
A03A2033. MITCHELL et al. v. DeGRAFT-HANSON et al.
(596 SE2d 408)

JOHNSON, Presiding Judge.

These joint appeals arise from the trial court's denial of defense motions for summary judgment on claims of a violation of the Georgia Fair Housing Act and intentional infliction of emotional distress. Because the evidence does not create genuine issues of material fact on either claim, the trial court erred in denying the summary judgment motions.

On August 25, 1997, Tony Hall listed his house for sale with Robert Mitchell, an associate broker for Neal Jackson Realty & Mortgage, Inc. On January 14, 1998, Carol Hayes, another Neal Jackson Realty agent, took prospective buyers Kwesi and Latrisa DeGraft-Hanson, along with their children, to see the house in the town of Monroe. When they arrived, Hall answered the door and asked to speak to Hayes inside the house while the DeGraft-Hanson family waited outside.

According to Hayes, once she was with Hall inside the house, he seemed angry and asked her what she thought she was doing by bringing "those people" to the neighborhood. He also allegedly said, "We don't need their kind here." Hayes was shocked by Hall's statements and thought he was discriminating against the DeGraft-Hansons because they are African-American.

Hayes walked out of Hall's house and appeared flustered to the DeGraft-Hansons. She apologized to them and told them that Hall would not let them look at the house due to their race. According to the

DeGraft-Hansons, Hayes told them that Hall told her that he had previously told the listing agent "that his house was not to be shown to blacks."

Hayes, however, does not recall either Hall making such a statement about the listing agent or herself mentioning the listing agent to the DeGraft-Hansons. Rather, she claims that it was the DeGraft-Hansons who later raised the question of whether the agent would have taken the listing with the understanding that the house would not be shown to black people. Hayes told them the listing agent surely would not have done that, and in fact, another Neal Jackson agent had previously shown the Hall house to an African-American client who had been referred by listing agent Mitchell. Regardless, after Hayes and the DeGraft-Hansons left the house, Hall called Cindy Atha, another Neal Jackson Realty agent, and allegedly told her that his house "was not supposed to be shown to blacks." Atha told Hall that he could not restrict the sale of his property in that way. Hall then asked Atha to extend an invitation to the DeGraft-Hansons to return to the house.

Atha called Hayes and told her that Hall had invited the DeGraft-Hansons to come back and view the house. Hayes called Kwesi DeGraft-Hanson and told him about the invitation to return to the house. He said he and his wife would talk about whether they still wanted to see the house.

The following day, Anita Good, the managing broker for Neal Jackson Realty, learned about the incident. She claims that she was prepared to immediately void the Hall listing, but did not do so because the DeGraft-Hansons had indicated that they still might be interested in viewing the property. But the DeGraft-Hansons never did visit the property again, and instead sent Neal Jackson Realty a letter demanding an apology. Good and Mitchell obtained a signed apology from Hall, which was mailed to the DeGraft-Hansons.

After the incident, Neal Jackson Realty did not show the Hall house to any other potential buyers, and on February 3, 1998, it voided the listing contract with Hall. The DeGraft-Hansons continued using agent Hayes to look for a house. She showed them other homes and sent them information, but the DeGraft-Hansons did not buy any of the properties shown by Hayes.

On January 13, 2000, the DeGraft-Hansons filed the instant lawsuit against Hall, Mitchell, Neal Jackson Realty and its franchisor, Coldwell Banker Real Estate Corporation.[1] The complaint alleges that the defendants violated the Georgia Fair Housing Act

---

[1] There were two other named defendants, but they have been voluntarily dismissed from the case.

and committed the tort of intentional infliction of emotional distress by agreeing to discriminate based on race. The trial court directed the parties to attend nonbinding arbitration, which they did.

The DeGraft-Hansons and Hall then appealed to the superior court from the arbitration decision. Mitchell, Neal Jackson Realty and Coldwell Banker moved for summary judgment. The trial court denied their motions, but certified the matter for immediate review. This court granted the applications for interlocutory review. Coldwell Banker appeals in Case No. A03A2032, while Mitchell and Neal Jackson Realty appeal in Case No. A03A2033.

## Case No. A03A2032

1. Coldwell Banker argues that the trial court erred in denying its motion for summary judgment because, as a franchisor, it cannot be held vicariously liable for the actions of its franchisee, Neal Jackson Realty, or the franchisee's agents. We agree.

In reviewing a trial court's denial of a summary judgment motion, we apply a de novo standard of review and consider the evidence, and all reasonable inferences therefrom, in favor of the party opposing summary judgment.[2] Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[3] In the instant case, having considered the evidence in favor of the DeGraft-Hansons, we find no genuine issue of material fact as to whether Coldwell Banker may be held vicariously liable for the acts of Neal Jackson Realty.

Vicarious liability is premised on a principal's right to control the time and manner of an agent's work.[4] Absent such control, even franchisors are not liable for the torts of franchisees.[5] In this case, there is no evidence showing that Coldwell Banker controlled the time or manner of Neal Jackson Realty's work. On the contrary, the agreement between Coldwell Banker and Neal Jackson Realty plainly reveals that they do not have an actual principal and agent relationship. The agreement expressly provides that they have a franchisor-franchisee relationship, that they are each independent businesses, that Neal Jackson Realty is not a Coldwell Banker agent and may not hold itself out as such, and that Neal Jackson employees are not subject to Coldwell Banker's control.

---

[2] *Smith v. Chandler*, 256 Ga. App. 440 (568 SE2d 592) (2002).
[3] OCGA § 9-11-56 (c).
[4] *Butkus v. Putting Greens Intl. Corp.*, 222 Ga. App. 661, 663 (475 SE2d 693) (1996).
[5] Id. at 664.

Indeed, the DeGraft-Hansons make no claim of actual agency, conceding that Coldwell Banker did not participate in the day-to-day operations of Neal Jackson Realty. Instead, they contend only that Coldwell Banker is vicariously liable under an apparent agency theory. That contention is without merit because Coldwell Banker never held out Neal Jackson Realty as its agent.

To recover under a theory of apparent agency, a plaintiff must establish (1) that the alleged principal held out another as its agent, (2) that the plaintiff justifiably relied on the alleged agent's skill or care based on the alleged principal's representation, and (3) that this justifiable reliance led to the injury.[6] Here, the DeGraft-Hansons cannot get past the first required showing.

They attempt to support their apparent agency theory by citing Neal Jackson documents — the listing agreement between Neal Jackson and Hall, and the flier advertising Hall's house — which fail to clearly state Neal Jackson's independent status. Even if such failures could be deemed to be representations by Neal Jackson Realty that it is Coldwell Banker's agent, those representations are insufficient to meet the first prong of an apparent agency claim because they were made by the alleged *agent*, not by the alleged *principal*.

It is not sufficient that the agent represent its status as an agent; it must be established that the principal held out the agent as its agent.[7] There is no evidence in the record that Coldwell Banker ever held out Neal Jackson Realty to the DeGraft-Hansons as its agent. In fact, the undisputed evidence is that the DeGraft-Hansons had no contact with Coldwell Banker, which was not involved in the listing of Hall's house. Because Coldwell Banker never held out Neal Jackson Realty as its agent, the DeGraft-Hansons' apparent agency theory must fail. Coldwell Banker therefore cannot be held vicariously liable for the acts of its franchisee and is entitled to summary judgment.[8]

### Case No. A03A2033

2. Mitchell and Neal Jackson Realty assert that the trial court erred in denying them summary judgment on the claim that they violated the Georgia Fair Housing Act. The assertion is correct because even though there is evidence of racial discrimination by

---

[6] *BP Exploration & Oil v. Jones*, 252 Ga. App. 824, 826 (1) (b) (558 SE2d 398) (2001); *Butkus*, supra at 663.

[7] *Butkus*, supra.

[8] See *BP Exploration*, supra at 828 (1) (b).

homeowner Hall, there is no evidence of such discrimination by Mitchell or Neal Jackson Realty.

One of the general purposes of the Fair Housing Act is to safeguard individuals from discrimination in any aspect relating to the sale of a dwelling because of that individual's race.[9] Consistent with that purpose, the Act provides that it shall be unlawful to refuse to negotiate for the sale of, or otherwise make unavailable or deny, a dwelling to any person because of race.[10] Likewise, it is unlawful to represent to any person because of race that a dwelling is not available for inspection or sale when such dwelling is in fact so available.[11]

The DeGraft-Hansons allege that Mitchell and Neal Jackson Realty violated the Act by denying them access to Hall's house because of their race, and that this denial of access was the direct result of an agreement between Mitchell and Hall to refuse to show the house to African-Americans. While the denial of access to the house based on such a racially discriminatory agreement would indeed violate the Act, we are constrained by the record before us to find that there is no evidence that Mitchell or Neal Jackson ever entered into the alleged agreement or denied the DeGraft-Hansons access to Hall's house.

The DeGraft-Hansons cite two alleged statements as evidence that Mitchell and Hall agreed to discriminate against home buyers based on race. The first statement is the DeGraft-Hansons' own claim that real estate agent Hayes told them that Hall told her that he had told the listing agent that his house was not to be shown to black people. The second statement is Neal Jackson agent Atha's claim that Hall told her that his house was not supposed to be shown to black people.

For purposes of our summary judgment analysis, we need not even reach the issue of whether or not the alleged statements are inadmissible hearsay.[12] Because even if we presume that the statements are admissible and were made as alleged, they still do not create genuine issues of material fact as to the claim that Mitchell and Neal Jackson Realty violated the Fair Housing Act. Construing the statements in favor of the DeGraft-Hansons, the strongest reasonable inference that can be drawn from them is that at some undetermined point Hall told the listing agent that he did not want

---

[9] OCGA § 8-3-200 (b) (2).
[10] OCGA § 8-3-202 (a) (1).
[11] OCGA § 8-3-202 (a) (4).
[12] See OCGA § 24-3-1.

his house shown to African-Americans. As repugnant as that expression of Hall's bias is, it does not support a further inference that Mitchell and Neal Jackson Realty shared Hall's bias, let alone that they actually reached an agreement with him to discriminate based on race.

On the contrary, Mitchell expressly denied at his deposition that he ever agreed to prevent African-Americans from viewing the house, and Hall also testified that he had no such discussions with Mitchell. More importantly, Mitchell and Neal Jackson's actions are not at all consistent with the alleged agreement to discriminate. First of all, even before the DeGraft-Hansons were taken to the Hall house, a Neal Jackson agent showed the house to another African-American client, who was a personal acquaintance of and had been referred by Mitchell. Furthermore, the DeGraft-Hansons were in fact taken by a Neal Jackson agent to view Hall's house; it was Hall who then turned both the agent and the DeGraft-Hansons away. Finally, after Hall refused to let the Neal Jackson agent show the house to the DeGraft-Hansons, Neal Jackson Realty informed him that he could not restrict the sale of his house in that way, it did not show the house to any other buyers and it then voided the Hall listing.

Thus, not only does the evidence fail to support an inference that Mitchell and Neal Jackson Realty reached an agreement with Hall to deny African-American buyers access to the house, but the evidence actually supports the opposite inference that Mitchell and Neal Jackson were actively seeking to sell the house to the DeGraft-Hansons or any other interested African-American buyer. Since there is no evidence of a racially discriminatory housing practice by Mitchell and Neal Jackson Realty, only evidence of discrimination by homeowner Hall, the trial court erred in denying summary judgment to Mitchell and Neal Jackson Realty on the claim that they violated the Fair Housing Act.

3. Mitchell and Neal Jackson Realty contend that the trial court erred in denying their motion for summary judgment on the claim of intentional infliction of emotional distress. We agree that the evidence does not create a jury issue on the claim.

To prevail on a claim of intentional infliction of emotional distress, the DeGraft-Hansons must establish all four of these elements: (1) that Mitchell and Neal Jackson Realty's conduct was intentional or reckless, (2) that their conduct was extreme and outrageous, (3) that their conduct caused the DeGraft-Hansons' emotional distress, and (4) that the emotional distress was severe.[13]

---

[13] See *Ashman v. Marshall's of MA*, 244 Ga. App. 228, 229 (1) (535 SE2d 265) (2000).

The DeGraft-Hansons' intentional infliction of emotional distress claim is premised on their allegation that Mitchell and Neal Jackson Realty agreed with Hall to discriminate based on race. As discussed above in Division 2, there simply is no evidence in the record supporting a reasonable inference that either Mitchell or Neal Jackson Realty ever entered into such an agreement. Thus, the DeGraft-Hansons cannot establish any of the first three elements of their claim, all of which require a showing of the allegedly wrongful conduct of Mitchell and Neal Jackson Realty.

Because the evidence does not create any genuine issues of material fact, the trial court erred in denying summary judgment to Mitchell and Neal Jackson Realty on the claim of intentional infliction of emotional distress.

*Judgment reversed in both Case No. A03A2032 and Case No. A03A2033. Eldridge and Mikell, JJ., concur.*

DECIDED MARCH 3, 2004.

*Weissman, Nowack, Curry & Wilco, William C. Thompson*, for appellants.
*Kenneth M. Sissel, Douglas P. McManamy*, for appellees.