**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 26, 2014**

# In the Court of Appeals of Georgia

A13A1811. BRIGHT, et al. v. SANDSTONE HOSPITALITY, LLC,
et al.

RAY, Judge.

This appeal arises from a premises liability claim filed by Joe Wayne Bright[1] against Sandstone Hospitality, LLC, and Wingate International Inns, Inc. Bright sued after he sustained injuries from a fall that occurred while he was a guest at a hotel owned by Sandstone and franchised by Wingate. The trial court, in two orders, granted Sandstone and Wingate's respective motions for summary judgment. Bright appeals, raising 11 enumerations of error. For the reasons that follow, we affirm as to Wingate, and reverse as to Sandstone.

---

[1] Bright's wife, Mary T. Bright, asserted a claim for loss of consortium.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Punctuation and footnotes omitted; emphasis omitted.) *Dew v. Motel Properties, Inc.*, 282 Ga. App. 368, 368 (638 SE2d 753) (2006). Such specific evidence, however, even if "meager and indefinite [may be] sufficient to establish the necessary standard as against a motion [for summary judgment] since this slight evidence must be considered in the light most favorable to plaintiffs." *Covil v. Robert & Co. Assocs.*, 112 Ga. App. 163, 167 (1) (144 SE2d 450) (1965). We conduct a de novo review of a trial court's grant of summary judgment. *Dew*, supra.

Viewed in favor of Bright, the evidence shows that on August 11, 2008, Bright checked into a Wingate Inn. The next morning, he took a bath. When he attempted

to rise from the tub using the grab bar to pull himself up, the bar pulled loose from the wall and he fell, striking his head and injuring his lower back, necessitating surgery. Bright sued Sandstone and Wingate, and now appeals from the trial court's grants of summary judgment in the defendants' favor.

1. We first address the grant of summary judgment to Wingate.[2]

(a) *Apparent agency*. Bright contends that the trial court erred in finding that no genuine issue of material fact existed as to whether Wingate could be found responsible for any actions or inactions by Sandstone under an apparent agency theory.[3]

> In order to recover under a theory of apparent or ostensible agency, a plaintiff must establish three elements: (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care

---

[2] Bright's appellate brief fails to comply with Court of Appeals Rule 25 (c) (1), which requires that the "sequence of arguments in the briefs shall follow the order of the enumeration of errors and shall be numbered accordingly." We will address those enumerations, to the degree we can discern them, if they are supported by citation of authority or argument. *Norman v. Doby*, 321 Ga. App. 126, 128 (1) (741 SE2d 293) (2013). We will not cull the record in search of instances of error. *Brown v. Mowr Enterprises*, 322 Ga. App. 93, 93 (742 SE2d 173) (2013).

[3] Bright specifically disclaims that Sandstone was an actual agent for Wingate. We note that the franchise agreement between Sandstone and Wingate provides that in the event of any finding of apparent agency, Sandstone must indemnify Wingate.

or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury.

(Citation omitted.) *Butkus v. Putting Greens Intl. Corp.*, 222 Ga. App. 661, 663 (475 SE2d 693) (1996).

Bright argues that Wingate, as the principal, held out Sandstone as its agent. In support of his argument, Bright points to Wingate's Standard of Operations Manual[4] at Section 901.1, which provides that "Wingate by Wyndham standard exterior signage shall be incorporated into all projects[,]" and at Section 901.0, which provides that "[s]ignage must be approved by Wingate Inns International, Inc. . . . prior to installation of all exterior signs." In an affidavit, Bright argues that he justifiably relied on Wingate's care and skill, and that he chose the hotel because "Wingate had a national reputation for safety, security and cleanliness."

We have held that merely displaying signs or a trademark may be insufficient to establish an apparent agency relationship, *Texaco Inc. v. Youngbey*, 211 Ga. App. 789, 790 (440 SE2d 533) (1994), and that a failure to post a sign stating that someone other than the franchisor owns and operates a business is insufficient, standing alone,

[4] The Standard of Operations Manuals and the parties' franchise agreement are subject to a consent protective order from the trial court and are under seal in the record before us, necessitating that we not publish this opinion.

to show apparent agency. See *Anderson v. Turton Dev., Inc.*, 225 Ga. App. 270, 275 (2) (b) (483 SE2d 597) (1997). Further,"[t]o establish the required elements [of apparent agency,] . . . it is not enough that the plaintiff *believe* than an agency relationship exists." (Citation omitted; emphasis in original*.) Butkus*, supra.

Bright relies upon *Watson v. Howard Johnson Franchise Systems, Inc.*, 216 Ga. App. 237, 237 (453 SE2d 758) (1995). In *Watson*, a hotel displayed "HoJo Inn by Howard Johnson" signs and the franchise agreement provided that all signage required prior approval from Howard Johnson. Further, the franchisee was required to post a sign saying it was independently operated, but it had not done so and Howard Johnson was aware of this. Id. The Watson court found that a jury issue existed as to whether an apparent agency relationship existed. Id.

In the instant case, by contrast, there was clear testimony from Amisha Patel, who was employed as a general manager and director of sales with Sandstone, that when Bright's fall occurred, a sign at the front desk of the hotel stated that the hotel was "owned and operated by Sandstone Hospitality, LLC." See *McGuire v. Radisson Hotels, Intl., Inc.* 209 Ga. App. 740, 743 (2) (435 SE2d 51) (1993) (physical precedent only) (where partnership operated hotel through franchise from Radisson, was authorized by franchise agreement to display Radisson signs, and posted no sign

indicating that anyone other than Radisson owned and operated the hotel, no apparent agency found because partnership – rather than Radisson as the principal – was solely responsible for holding itself out as Radisson). Given the foregoing, Bright cannot meet the three-prong *Butkus* test, supra. As there is no genuine issue of material fact, the trial court did not err in concluding as a matter of law that there was no apparent agency relationship between Wingate and Sandstone.

(b) *Third-party beneficiary*. Bright argues that because Wingate undertook to perform quality assurance inspections of its franchisees' properties, it assumed a duty to exercise ordinary care toward him as a hotel guest.

Wingate's franchise agreement at Section 3.9 requires franchisees to "acknowledge [their] participation in [Wingate's] quality assurance inspection program (including unannounced inspections)[.]" Further, Wingate's manual requires that there be a shower grab bar capable of supporting a 300-pound sustained weight, Dan Olsen, Wyndham Hotel Group's[5] director of quality assurance and conversions, testified that his department was tasked with inspecting only the cosmetic aspects of a hotel – such as whether the shower grab bar was rusty or unclean – and not its safety or function. He testified that he did not know what, if any, department

---

[5] Wyndham is the parent company of Wingate.

inspected the grab bars for safety or to enforce the 300-pound sustained weight requirement.

Bright essentially is arguing that he is a third-party beneficiary of the agreement between Sandstone and Wingate that provides for inspections. OCGA § 9-2-20 (b) provides that "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." However

> in personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury.

(Citations and punctuation omitted.) *Anderson v. Atlanta Committee for the Olympic Games, Inc.*, 273 Ga. 113, 117 (4) (537 SE2d 345) (2000). An examination of the franchise contract between Sandstone and Wingate shows no intent to benefit third persons such as hotel guests. The franchise agreement, under the heading, "Your Improvement and Operating Obligations" states, "We will not be liable to your . . . guests, others or you on account of . . . our inspection of the Facility before, during,

or after your initial or any subsequent renovation."[6] While the "Operations" section of the agreement makes no mention of liability, a blanket statement applicable to the entire agreement provides, "This Agreement is exclusively for the benefit of the parties. There are no third party beneficiaries." Based on the foregoing, we conclude that Bright was not a third-party beneficiary to the agreements between Sandstone and Wingate, and the trial court correctly granted summary judgment to Wingate.

2. We next address the grant of summary judgment to Sandstone.

> Owners or occupiers of land are liable to their business customers for injuries caused by the owners' failure to exercise ordinary care in keeping the premises and approaches safe. However, they are not insurers of their safety. In order to recover, the invitee must prove that (1) the defendant had actual or constructive knowledge of the hazard, and (2) the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the defendant's control. The basis for the owner's liability is the owner's superior knowledge of the existence of a condition that could subject the invitee to an unreasonable risk of injury.

(Punctuation and footnotes omitted.) *Bonner v. Southern Restaurant Group, Inc.*, 271 Ga. App. 497, 499 (610 SE2d 129) (2005). See also OCGA § 51-3-1. "The mere fact

---

[6] Wingate's manuals governing standards of operation contain similar language.

that an incident occurred does not create a presumption of negligence." (Footnote omitted.) *Dew*, supra at 371 (1). "The liability of a proprietor under OCGA § 51-3-1 which results from failure to keep the premises safe always depends on notice of the danger except where notice is presumed, as in cases of defective construction." (Citation and punctuation omitted.) *Robinson v. Western Intl. Hotels Co.*, 170 Ga. App. 812, 814 (1) (318 SE2d 235) (1984).

Bright contends that Sandstone had notice of problems with the hotel grab bars. He also asserts that in instances of defective construction, such as this is alleged to be, an owner is liable regardless of whether it knew of the defect or not.

(a) *Actual or constructive knowledge*. As noted above, the first prong of a premises liability analysis is whether a defendant had actual or constructive knowledge of the hazard. *Bonner*, supra. Bright's expert, Andrew Smith, stated that "[t]here is no visual or tactile warning that the [grab] bar is not solidly attached[.]"

Relying on Smith's testimony, Sandstone contends that it had no notice of any defect and that absent such knowledge, it cannot be required to discover the defect nor can knowledge of the defect be imputed to it. In a deposition, Patel, Sandstone's general manager, testified that she had no knowledge of any instances of the grab bars coming loose, needing adjustment, or having to be replaced, but when asked by

9

counsel if, other than the incident involving Bright, there had been any repairs to any grab bar, she testified that since Sandstone took over the hotel in 2001, "[t]o my knowledge, I think there had been maybe one other one that we did repair" although she was not sure when, and that Sandstone also replaced a cracked wall – not the wall on which the grab bar was installed – but she was unsure whether the grab bar had been reinstalled. Given that there is some evidence from Patel's testimony from which a jury could find that a grab bar had to be repaired previously, see *Covil*, supra, a jury question exists as to Sandstone's exercise of ordinary care. See *Valentin v. Six Flags Over Georgia, L. P.*, 286 Ga. App. 508, 509-512 (649 SE2d 809) (2007) (where plaintiff slipped on rubber mat because it had mildew underneath even though defect "is in some way hidden, camouflaged or intrinsically unsafe, the question of ordinary care in inspecting the premises should be one for the jury") (citation and punctuation omitted.)

(b) *Defective construction*. Bright's expert, Smith, stated in his report that the grab bar in the instant case was a "completely concealed flaw in the construction" and in his affidavit stated that the bar did not fail because of wear and tear. He also opined that the grab bar was defectively installed, and that the use of plastic, threaded inserts to attach the bar to the wall showed that the installation was improper. Smith

10

additionally stated that installation of the grab bar was not compliant with applicable safety codes and listed the particular code sections at issue.

Under OCGA § 51-3-1, a premises owner has a duty to exercise ordinary care to keep the premises safe for invitees. In cases of defective construction, the owner is presumed to have knowledge of the danger.[7] *Freyer v. Silver*, 234 Ga. App. 243, 245 (2) (507 SE2d 7) (1998).

> Constructive knowledge may be inferred when there is evidence that the
> owner lacked a reasonable inspection procedure. In order to prevail at
> summary judgment based on lack of constructive knowledge, the owner
> must demonstrate not only that it had a reasonable inspection program

---

[7] Sandstone counters that where, as here, "a structure has been built by a predecessor in title of the landlord, the landlord can be held responsible to his tenant for a defect in original construction only if he knew or by the exercise of reasonable care should have known of the defect [b]efore the tenancy was created." (Citations omitted.) *Uniroyal Inc. v. Hood*, 588 F2d 454, 464 (5th Cir. 1979). We note that courts have typically applied this exception only in cases involving "egregious structural defects." (Footnote omitted.) *Rainey v. 1600 Peachtree, LLC*, 255 Ga. App. 299, 301, n. 11 (565 SE2d 517) (2002), citing *Flagler Co. v. Savage*, 258 Ga. 355 (368 SE2d 504) (1988) (plaintiff fell down 70-foot precipice adjacent to parking lot that was concealed by foliage and had no protective structure or warning signs); *Spence v. C & S Nat. Bank*, 195 Ga. App. 294 (393 SE2d 1) (1990) (employee fell through floor built of unreinforced pressboard). Bright points us to no authority, nor do we find any, indicating that in the instant circumstances, a hotel qualifies as a "landlord" and a hotel guest qualifies as a "tenant" such that this legal theory would apply. Further, as we determined in Division 2 (a), there is a fact question as to whether Sandstone exercised reasonable care.

in place, but that such program was actually carried out at the time of the incident.

*Avery v. Cleveland Avenue Motel, Inc.*, 239 Ga. App. 644, 645 (2) (521 SE2d 668) (1999) (where handrail on hotel stairway pulled loose when plaintiff grabbed it to stop herself from falling, summary judgment inappropriate on issue of hotel's constructive knowledge because there was evidence that hotel owner lacked reasonable inspection procedure). See *Wilkerson v. Charles W. Bell & Assocs., P. C.*, 205 Ga. App. 779, 781 (423 SE2d 711) (1992) (where plaintiff asserts improper construction amounting to negligence, landowner may be liable whether or not it knew of defects in original construction). See also *Kauffman v. Eastern Food & Gas, Inc.*, 246 Ga. App. 103, 105 (2) (539 SE2d 599) (2000) (owner has duty of ordinary care to protect invitee from unreasonable risk of harm where owner has superior knowledge and has duty to inspect premises for possible dangerous conditions of which owner does not have actual knowledge). But see *Ferguson v. Premier Homes, Inc.*, 303 Ga. App. 614, 615 (695 SE2d 56) (2010) (where worker was injured when pull-down attic staircase detached from ceiling and fell, because there was no evidence of negligent construction or installation and because staircase complied with building codes, owner and builder of premises had no duty to inspect).

Here, Patel testified that hotel owners should inspect guest rooms for hazards or defects that could cause injury. She stated that the hotel had a regular maintenance schedule, but that during her time as general manager, the grab bars were never tested to see if they could sustain a 300-pound load as provided by franchisor Wingate's operations manual. Sandesh Patel, one of the owners of Sandstone, testified that neither he nor Sandstone had the building inspected for safety issues prior to operating it as a hotel.

Given this, there is evidence from which a jury could find that Sandstone lacked reasonable inspection procedures and thus had at least constructive knowledge of the defect. *Kauffman*, supra at 105 (2). Thus, because questions of fact remain for jury determination, the trial court erred in granting summary judgment to Sandstone.

(c) Given our determinations in Division 3 (a) and (b), we need not address Bright's other contentions of error as to Sandstone.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Miller, J., concur.*