**FOURTH DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J. and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2019**

# In the Court of Appeals of Georgia

A18A2081.  SAGE  ATLANTA  PROPERTIES,  LTD.  v. HAWXHURST

BARNES, Presiding Judge.

Sage Atlanta Properties, LTD (hereinafter "Sage") appeals the trial court's grant of summary judgment to George Hawxhurst.

Summary judgment is proper when the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. OGCA § 9-11-56 (c). We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party. *Touchton v. Bramble*, 284 Ga. App. 164 (643 SE2d 541) (2007). Additionally, to prevail at summary judgment a movant who does not bear the burden of proof need only show an absence of evidence to support an essential element of the nonmoving

party's case. *Lau's Corp v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Absent evidence sufficient to create a genuine issue as to any essential element of the respondent's claim, summary judgment is proper regardless of any factual issues regarding nonessential elements. Id.

So viewed, the record shows that on November 1, 2014, Sage and The Diner Group of Georgia, LLC entered into a 24-month lease of property to be used as a restaurant. Hawxhurst and Christopher Murphy were guarantors for the Diner Group on the lease.[1] The lease contained a provision for four two-year renewal options. On June 28, 2016, Tammi Duncan signed a notice of intent to exercise the option to renew and faxed the notice to Sage. On the document, Duncan was identified as the owner/president of the Diner Group. Because she was not familiar with Duncan, Sage's general counsel contacted the general counsel for the Diner Group and was informed that Duncan now owned Hawxhurst's shares in the company. Based on the explanation, Sage accepted the renewal.

During the renewal period, the Diner Group defaulted on the lease terms and Sage filed a complaint for breach of lease and an action on a personal guaranty

---

[1] Per the lease, the "guaranty . . . shall continue in full force and effect during the term of the lease and for any renewal and shall not be affected by any modifications, changes or revisions to the lease."

against The Diner Group, Duncan, Hawxhurst, and Murphy.[2] Sage alleged that The Diner Group had breached the lease by failing to pay rent, taxes, late fees and other obligations under the lease, and that Hawxhurst and Murphy had personally guaranteed the performance of the lease obligations and thus Sage was entitled to a judgment for those monies from the guarantors. Hawxhurst answered and subsequently filed a motion for summary judgment in which he asserted that the renewal was void and unenforceable because both the lease renewal and the authority of an agent to execute the renewal on behalf of the tenant must be in writing.[3] The trial court granted the motion and held that although Duncan was an authorized agent of the Diner Group for purposes of signing the renewal lease, because it was a contract for a lease for a period in excess of one year, "[t]he absence of proper written evidence authorizing an agent to bind a principal to such a lease renders the contract void and unenforceable." The trial court also found that Duncan failed to provide notice of the extension per the express terms of the lease because the notice

---

[2] Hawxhurst is the only appellee in this appeal.

[3] The trial court had earlier entered a default judgment against Hawxhurst; however, the court granted Hawxhurst's subsequent motion to open default.

documents were faxed to Sage rather than, per the terms of the lease, "serve[d] [it] by registered or certified mail." .

> When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

OCGA § 9-11-56 (e).

On appeal, Sage contends that the trial court erred in granting summary judgment to Hawxhurst because the evidence demonstrated Duncan's apparent authority to execute the lease extension on behalf of the Diner Group and its guarantors. Sage further asserts that a jury question remains as to Duncan's actual authority to act on their behalf, and Sage's reliance on her apparent agency.

"To satisfy the statute of frauds, a contract creating the relation of landlord and tenant for a period in excess of one year must be in writing." (Punctuation and footnote omitted.) *Nacoochee Corp. v. Suwanee Inv. Partners*, 275 Ga. App. 444, 446 (1) (620 SE2d 641) (2005). See OCGA § 44-7-2 (a). And, when a contract required

4

by the statute of frauds to be in writing is executed by an agent, the authority of the agent to execute the agreement must also be in writing. *Brookhill Mgmt. Corp. v. Shah*, 197 Ga. App. 305, 306 (398 SE2d 290) (1990).

Here, the record includes a series of emails inquiring into Duncan's relationship with the Diner Group after Sage's general counsel received the lease extension signed by Duncan. Murphy, the other guarantor of the lease, emailed the attorney verifying Duncan's relationship with the Diner Group, informing Sage that he had transferred Hawxhurst's shares to Duncan, and that he had been "looking for a new partner as we still had eleven months remaining on the lease." The email also detailed Duncan's experience as a restauranteur and noted that business had been improving with her involvement.

As to the sufficiency of the email to satisfy that the agency authorization be in writing,

> [t]he "equal dignity" rule, codified at OCGA § 10-6-2, provides in part, "The act creating the agency shall be executed with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency shall be created." Accordingly, it has been held that since a contract creating the relation of landlord and tenant for a period in excess of one year must be in writing, the authority of an agent to execute such a contract likewise must be in writing. However, it is

5

also the law in this state that while a written instrument may have been executed by an agent not having any authority in writing to do so *or not having been ratified by an act of comparable dignity,* the principal may nevertheless be estopped by his acts from denying the authority of his agent.

(Citations and punctuation omitted; emphasis supplied.) *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 133-134 (3) (4) (345 SE2d 330) (1986). And,

[t]he authority of an agent . . . may be established by the principal's conduct and course of dealing, and if one holds out another as his agent, and by his course of dealing indicates that the agent has certain authority, and thus induces another to deal with his agent as such, he is estopped to deny that the agent has any authority which . . . the agent apparently has.

(Punctuation omitted.) Id.

We agree with the trial court's finding that Murphy's email explaining Duncan's position did not satisfy the statute of frauds because the email was not a writing in "equal dignity" to that of the original lease such that it legally established Duncan's agency.

However, we find that there remains a genuine issue of material fact as to whether Sage is entitled to relief under the doctrine of apparent agency. See *Butkus*

6

*v. Putting Greens Intl. Corp.*, 222 Ga. App. 661, 663 (475 SE2d 693) (1996) ("In order to recover under a theory of apparent or ostensible agency, a plaintiff must establish three elements: (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury.")

> The doctrine of apparent agency is predicated on principles of estoppel, and its applicability, therefore, is determined by examining both the conduct of the alleged principal and the detrimental reliance on that conduct by the third party asserting the doctrine. Apparent authority . . . creates an estoppel allowing third parties to bind a principal to the agent's acts on account of the principal's conduct, reasonably construed by third parties acting in innocent reliance thereon. The acts of the agent which create apparent authority may include written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. While a finding of apparent agency cannot be based upon the assumption that an agency relationship exists, the conduct giving rise to apparent agency may be proved . . . by . . . proof of circumstances, apparent relations, and the conduct of the parties. Such evidence must show that the principal either intended to cause the third person to believe that the agent was authorized to act for him, or he should have realized that his conduct was likely to create such belief. . . . [A] principal may be estopped from

7

denying agency where his intentional or careless conduct causes a third party to believe that the transaction was entered into by or for him.

(Citations and punctuation omitted.) *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 109 (2) (661 SE2d 578) (2008).

It is undisputed that Sage undertook to ascertain Duncan's relationship with the Diner's Group and was assured by a partner that she was also a partner with the group and had for the eleven months prior to the extension been involved in the operation and re-branding of the restaurant. And, it was only after receiving that assurance, and relying on Duncan's apparent partnership with the Diner Group, that Sage accepted the renewal. Thus, the evidence would support a finding of Duncan's apparent agency.

The trial court also found that Duncan's failure to comply with the terms of the lease by not proving the required notice by registered mail "renders the option unenforceable." We do not agree.

Generally, "the exercise of a contractual option by an offeree must be unequivocal and in accordance with the terms of the option in order to be valid." (Footnotes and punctuation omitted.) *Atkinson v. Cook*, 271 Ga. 57, 58 (518 SE2d 413) (1999). In *Atkinson*, the Supreme Court of Georgia held that strict compliance

8

was required by a buyer who purported to exercise an option by sending notice via regular mail, when the contract required notice by registered mail. Id. However, the Supreme Court also stated that there was no evidence that the seller waived his right to strict compliance with the option contract's terms and noted that it might have reached a different result if the seller had accepted the buyer's improper notice within the option period or if he had proceeded to a closing based on the improper notice. Id. at 59, n. 8.

In this case, it was Sage, not Hawxhurst who had the right to demand strict compliance of the renewal options mail requirement. After receiving the notice via fax, rather than challenging the propriety of the notice, Sage's general counsel contacted the Diner Group to inquire about Duncan's authority and afterward, according to counsel, being reassured, Sage accepted the renewal. The guaranty specifically provided that Sage, "without notice to, without the consent of, and without affecting the liability of [Hawxhurst], may modify, waive, supplement or otherwise change any of the terms, conditions, provisions, restrictions or liabilities contained in the Lease." Given these events, we conclude that strict compliance with the certified mail requirement was waived by Sage. See *Storey v. Austin ,* 221 Ga.

9

692, 695-696 (1) (146 SE2d 728) (1966) . And in light of the language in the guaranty, Hawxhurst's liability thereunder is not affected by such waiver.

Accordingly, we reverse the trial court's grant of summary judgment to Hawxhurst.

*Judgment reversed. Doyle, P. J. and Mercier, J., concur.*