A00A1172. SCHLOTZSKY'S, INC. v. HYDE et al.
A00A1173. SCHLOTZSKY'S, INC. v. CONE.
A00A1174. SCHLOTZSKY'S, INC. v. GUNSELMAN.
(538 SE2d 561)

ELLINGTON, Judge.

In these consolidated cases, the appellees allege they contracted Hepatitis A from eating tainted food at a Schlotzsky's Deli franchise owned and operated by Tidwell Food Company, Inc. Both Schlotzsky's, Inc. and the appellees moved for summary judgment on whether Schlotzsky's, as franchisor, was vicariously liable under an actual agency theory for Tidwell Food Company's alleged negligence. The trial court denied Schlotzsky's motion and granted partial summary judgment to appellees Mary and David Hyde and Beatrice Coker in Case No. A00A1172; to Kathleen Cone in Case No. A00A1173; and to Claudia Gunselman in Case No. A00A1174. In each case, the trial court found that the franchise agreement and operations manual gave Schlotzsky's the right to control the time, manner, method, and means of the franchisee's work and Schlotzsky's was, therefore, vicariously liable for any negligence by the franchisee. We disagree and reverse the decisions of the court below.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) Matjoulis v. Integon Gen. Ins. Corp., 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

The applicable law is well settled and has been restated by this Court often:

> [I]n order to impose liability on the franchisor for the obligations of the franchisee, it must be shown that: (a) the franchisor has by some act or conduct obligated itself to pay

the debts of the franchisee; or (b) the franchisee is not a franchisee in fact but a mere agent or "alter ego" of the franchisor.

(Citations and punctuation omitted.) *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. 740, 742 (1) (435 SE2d 51) (1993); *Baldino's Giant Jersey Subs v. Taylor*, 216 Ga. App. 467 (454 SE2d 599) (1995). In this case, there is no issue as to whether Schlotzsky's obligated itself to pay Tidwell Food Company's debts. It did not. And, contrary to the findings of the trial court and the appellees' contentions, there is no evidence that Tidwell Food Company is merely an agent or alter ego of Schlotzsky's.

> The historical test applied by Georgia courts has been whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract.

(Citation and punctuation omitted.) *McMullan v. Ga. Girl Fashions*, 180 Ga. App. 228, 230 (2) (348 SE2d 748) (1986); *Baldino's*, 216 Ga. App. at 467. In this case, although the franchise contract and operations manual set forth very detailed standards pertaining to food preparation, hygiene, and sanitation, Schlotzsky's did not reserve to itself the right to control the time, manner, or method in which Tidwell Food Company, through its employees, actually executed those standards.

Section 8.1 of the franchise agreement provided that Tidwell Food Company is an independent contractor and shall not be considered an agent, partner, or joint venturer of Schlotzsky's. Further, the agreement provided that:

> Except as expressly set forth in this agreement, the UDA and the MANUAL, the FRANCHISEE shall have full and complete control of the day-to-day operation of his business and the business policies and practices adopted and utilized in connection therewith, including, without limitation, the terms and conditions of employment of FRANCHISEE'S employees.

Contrary to the trial court's conclusion, there is no language in the agreement that reserves to Schlotzsky's any right "to control the daily activities of [Schlotzsky's] employees." *Baldino's*, 216 Ga. App. at 467. Further, nothing in the manual gives Schlotzsky's supervisory control over Tidwell Food Company's day-to-day work. Although the operations manual sets out mandatory standards for food and

service quality, some of which are quite specific and detailed, these standards are not intended as a means of directing or controlling "the time, manner and method of performance of the daily operations of the franchise but as a means of achieving a certain level of quality and uniformity within the [Schlotzsky's] system." *McGuire*, 209 Ga. App. at 742 (1).

As we have held, a franchisor may protect its franchise and its trade name by setting standards governing its franchisee's operations, including how its product is manufactured, packaged, prepared, or served. See, e.g., *McGuire*, 209 Ga. App. at 742-743; *Frey v. PepsiCo*, 191 Ga. App. 585, 586-587 (1) (382 SE2d 648) (1989). Further, these standards may be quite detailed, specific, and strict. See id.; *McGuire*, 209 Ga. App. at 742. A franchisor's reserving the right to inspect, monitor, or evaluate the franchisee's compliance with its standards and to terminate the franchise for noncompliance is *not* the equivalent of retaining day-to-day supervisory control of the franchisee's business operations as a matter of law. See id. at 742-743 (1); *Anderson v. Turton Dev.*, 225 Ga. App. 270, 274-275 (2) (a) (483 SE2d 597) (1997).

Further, in this case, there is no evidence showing, as a matter of fact, that Schlotzsky's had undertaken day-to-day supervisory control of its franchisee or had otherwise assumed control of the time and manner of executing Tidwell Food Company's work when appellees consumed the allegedly tainted food. See *Baldino's*, 216 Ga. App. at 467. Rather, the record shows that Schlotzsky's hired an independent company, Quality Concepts, Inc., to inspect its Atlanta franchisees, including Tidwell Food Company. Quality Concepts inspected Tidwell Food Company's restaurant twice a year. Further, although Schlotzsky's area developers were also charged with the duty to continuously monitor franchisees for compliance with standards, there is no evidence that any of these individuals had or assumed any supervisory duties over the day-to-day work of any person employed by Tidwell Food Company. See *McGuire*, 209 Ga. App. at 743; *Baldino's*, 216 Ga. App. at 467. Finally, the fact that Schlotzsky's responded to Tidwell Food Company's request for advice about how to handle the media attention generated by these incidents or the fact that Schlotzsky's reconsidered its standards pertaining to employee hygiene after these incidents is not relevant to whether Schlotzsky's had any supervisory control over Tidwell Food Company at the time appellees consumed the allegedly tainted food.

For these reasons, the trial court erred in granting appellees' motion for partial summary judgment and in denying Schlotzsky's motion for summary judgment on the issue of its vicarious liability under an actual agent or alter ego theory.

*Judgments reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 25, 2000 —
RECONSIDERATION DENIED SEPTEMBER 14, 2000.

*Kilpatrick Stockton, Roderick C. Dennehy, Jr., Craig E. Bertschi, Audra A. Dial, Jill Warner,* for appellant.

*Cooper & Jones, Lance A. Cooper, Scott B. Cooper, Andrew W. Jones,* for appellees.