A01A0508. PIZZA K, INC. v. SANTAGATA.
(547 SE2d 405)

SMITH, Presiding Judge.

This appeal involves the issue of a franchisor's liability for the alleged negligence of a pizza delivery driver making a delivery on behalf of a franchisee. We conclude that the franchisor did not have sufficient authority to control the time, manner, and method of executing the franchisee's work, so as to require a finding that the franchisee was an agent or alter ego of the franchisor. We therefore reverse the trial court's denial of the franchisor's motion for summary judgment.

Pizza K, Inc. ("Pizza K") is a business that franchises pizza take-out and delivery facilities. At the time of the incident here, Tom Huang was the "franchisee-owner" of a Pizza K franchise in the Brookhaven area of Atlanta ("Brookhaven"). Lee Sun was the "owner/general manager," and Carl Hartsfield was a delivery driver. While making a delivery,[1] Hartsfield was involved in a collision with David Santagata, and Santagata brought suit against Hartsfield, Pizza K, Huang, and Sun. Pizza K moved for summary judgment on the ground that it was not vicariously liable for Hartsfield's alleged negligence because it did not exercise sufficient control over Brookhaven to render Brookhaven its agent. The trial court denied the motion,

---

[1] Hartsfield testified that he was an independent contractor.

finding that the franchise agreement gave Pizza K "practically unlimited *potential* authority" or control over Brookhaven. This appeal ensued after we granted Pizza K's application for interlocutory appeal.

It is well settled that to impose liability on a franchisor for the acts of a franchisee, a plaintiff must show that the franchisor has obligated itself to pay the franchisee's debts or that the franchisee "is not a franchisee in fact but a mere agent or alter ego of the franchisor." (Citations and punctuation omitted.) *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. 740, 742 (1) (435 SE2d 51) (1993).[2] It is undisputed that Pizza K did not obligate itself to pay the debts of the Brookhaven Pizza K. In fact, the franchise agreement expressly prohibits Pizza K from assuming the debts of Brookhaven. In this case, therefore, Pizza K's vicarious liability must depend on whether Brookhaven was merely an agent or alter ego of Pizza K.

The historical test applied by courts in this state to determine whether an agency relationship exists is "whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract." (Citation and punctuation omitted.) *McGuire*, supra. In applying this test, we must be mindful of the special relationship created by a franchise agreement, for "a franchisor is faced with the problem of exercising sufficient control over a franchisee to protect the franchisor's national identity and professional reputation, while at the same time foregoing such a degree of control that would make it vicariously liable for the acts of the franchisee and its employees." (Citations and punctuation omitted.) Id.

The detailed agreement here requires Brookhaven to operate its business "in accordance with the standards, specification and procedures set forth in" Pizza K's operations manual. It requires Brookhaven to use products and equipment prescribed by Pizza K and to require its employees to wear certain uniforms. Further, the agreement provides for periodic inspections "for the purpose of ascertaining whether [Brookhaven] is operating the facility in accordance with the terms of" the agreement and gives Pizza K the right to require immediate termination of any employee who causes the facility to fail an inspection. With respect to Brookhaven's hours of operation, the agreement provides that Brookhaven "shall remain open for business during reasonable business hours to be determined by" Pizza K and

---

[2] Although one judge concurred in judgment only in *McGuire*, that case has been cited with approval in subsequent cases. See, e.g., *Schlotzsky's, Inc. v. Hyde*, 245 Ga. App. 888, 889 (538 SE2d 561) (2000); *Anderson v. Turton Dev.*, 225 Ga. App. 270, 274 (483 SE2d 597) (1997); *Baldino's Giant Jersey Subs v. Taylor*, 216 Ga. App. 467 (454 SE2d 599) (1995).

forbids the solicitation of personnel from other Pizza K franchises.

The agreement also requires that Brookhaven pay weekly flat royalty and advertising fees to Pizza K and provides some limited requirements regarding advertising measures. We also note that the agreement recites that Brookhaven is to "adhere to" information provided in the operations manual concerning "bookkeeping forms, profit and loss, balance sheet and cost control procedures," and Pizza K has the right under the agreement to examine Brookhaven's records "at all reasonable times." The agreement further provides for training of a franchisee to operate a Pizza K facility, to be given at a time and place determined by the franchisor. The training usually lasts about one week and is conducted by Pizza K's president, Greg Granville. According to Granville, after completion of the training, franchisees "are pretty much on their own with the exception of . . . a monthly inspection for quality control."

The franchise agreement in this case obviously contains specific and even strict requirements concerning operation of the franchise. But we cannot conclude that the agreement renders Brookhaven a mere alter ego or agent of Pizza K or that it gives Pizza K "unlimited potential authority" over Brookhaven's daily operations. While it provides for periodic inspections and termination of employees in limited circumstances and requires that Brookhaven operate during reasonable business hours, Pizza K is not authorized under the agreement to exercise supervisory control over the daily activities of Brookhaven's employees. See *Baldino's Giant Jersey Subs v. Taylor*, 216 Ga. App. 467 (454 SE2d 599) (1995).

Notably, the agreement makes no provisions for Pizza K's supervisory control over individuals hired by Brookhaven to serve as delivery drivers. In *McGuire*, supra, the plaintiff was injured after being escorted from a hotel bar by security. Among other reasons for concluding that the franchisee was not an agent of the franchisor, we found no suggestion in franchise documents giving the franchisor supervisory control over individuals hired to provide lounge security. Id. at 743. Similarly, the agreement here contains no guidelines concerning the hiring or firing of drivers. And neither the agreement nor other evidence in the record suggests that Pizza K exercised any authority or control over "the time, manner, and method of their performance." *Frey v. Pepsico*, 191 Ga. App. 585, 586 (1) (382 SE2d 648) (1989). In fact, Granville testified that Pizza K had no agreement with any drivers and that its only agreement was with the franchisee. He also testified that he never had discussions with any franchisees as to whether delivery drivers would be hired as employees or subcontractors. His only concern with the drivers was that they "follow the laws of the [S]tate of Georgia."

Also, we cannot conclude that Pizza K's authority to require the

use of certain bookkeeping forms, to conduct monthly inspections, and to require termination of employees causing the facility to fail the inspections amounted to day-to-day supervisory control over Brookhaven, for it seems clear that this authority simply served as a means of achieving a desired level of uniformity and quality within the system of Pizza K franchises. *Frey*, supra. As stated in *Schlotzsky's, Inc. v. Hyde*, 245 Ga. App. 888 (538 SE2d 561) (2000), reserving the right to inspect or evaluate a franchisee's compliance with the franchisor's "standards and to terminate the franchise for noncompliance is not the equivalent of retaining day-to-day supervisory control of the franchisee's business operations as a matter of law. [Cits.]" (Emphasis omitted.) Id. at 890. Similarly, requiring franchisees to purchase foodstuffs from certain suppliers helped ensure uniformity throughout the Pizza K system and helped serve as a means of acquiring volume discounts. The agreement at issue here simply served as a means of ensuring conformance with a certain level of quality and protecting Pizza K's professional reputation, and the trial court erred in denying Pizza K's motion for summary judgment.

*Judgment reversed. Barnes and Phipps, JJ., concur.*

DECIDED APRIL 6, 2001.

*Christopher J. McFadden, Aryeh S. Bondy*, for appellant.
*Gambrell & Stolz, Irwin W. Stolz, Jr., Steven G. Hall, Linda A. Klein, Stevens & McClung, James B. McClung*, for appellee.