### A01A1811. HYDE et al. v. SCHLOTZSKY'S, INC.
(561 SE2d 876)

SMITH, Presiding Judge.

This case appears before us for the second time. As more fully set out in *Schlotzsky's, Inc. v. Hyde*, 245 Ga. App. 888 (538 SE2d 561) (2000) (*Schlotzsky's I*), several plaintiffs filed an action against Schlotzsky's, Inc. and Tidwell Food Company alleging that they contracted Hepatitis A after eating tainted food at a Schlotzsky's franchise owned and operated by Tidwell. Concluding that Tidwell was not a mere "alter ego" of Schlotzsky's and therefore that Schlotzsky's was not vicariously liable for any negligence of Tidwell, we reversed the trial court's order denying summary judgment to Schlotzsky's. Id. at 890. The plaintiffs asserted a separate negligence claim against Schlotzsky's, however, which was not addressed in *Schlotzsky's I*. The basis for that claim was that Schlotzsky's failed to exercise ordinary care in performing its duty to insure that its franchisees, including the restaurant involved in this case, complied with "certain minimum standards for cleanliness and sanitation." More specifically, appellants David and Mary Hyde and Beatrice Coker maintain that Schlotzsky's knew one of its employees had violated its cleanliness policy and that if the company had followed its own policies concerning employee hygiene, none of its customers would have contracted Hepatitis A. The trial court granted summary judgment to Schlotzsky's. Because we conclude that Schlotzsky's did comply with its own policies concerning the correction of hygiene issues to the extent that it was able as a franchisor lacking the ability to control the day-to-day operations of the franchise, we affirm.

Under its franchise agreement with Tidwell, Schlotzsky's undertook the duty of providing periodic inspections and evaluations, at its discretion, of the restaurant and reporting the results to Tidwell. The agreement further required Tidwell to correct deficiencies indicated in the report within seven business days of receiving the report. If Tidwell failed to correct any deficiency within seven days, it would be in default under the agreement, giving Schlotzsky's the option of terminating the franchise.

An independent company, Quality Concepts, Inc., was hired by Schlotzsky's to perform these biannual inspections. *Schlotzsky's I*, supra at 890. During a December 1996 inspection, Alice Barnabee, an inspector for Quality Concepts, observed a hand-washing violation by Terry Hughes, one of the food-service employees. Barnabee's inspection report noted that Hughes needed to "wash hands after coughing and putting hands in pocket." It appears that, unbeknownst to Schlotzsky's and Hughes, sometime during his employment with the restaurant, Hughes may have been infected with the Hepatitis A virus. This report was forwarded to Schlotzsky's. Matthew Clegg, the

restaurant manager, testified that no one from Schlotzsky's corporate headquarters discussed the hand-washing incident with him.

Another inspection was performed in May 1997 by Barnabee who again observed Hughes violating the hand-washing policy. She testified that "[h]e was working the cash register, was touching his face and then going down touching his apron." She told Hughes to wash his hands and then informed Clegg about the incident. According to Barnabee, Clegg talked with Hughes and sent him home. Although Hughes returned to work two days later, he either was terminated or quit within a few weeks. A short time before the May 1997 inspection, appellants were infected with the Hepatitis A virus after allegedly eating contaminated food at the restaurant.

Relying in large part on the testimony of Schlotzsky's director of training, Brad Lutz, and its president, John Wooley, appellants argue that after learning of a cleanliness violation, "it was Schlotzsky's policy to follow-up with the franchisee to ensure compliance with its hygiene standards." They maintain that because Schlotzsky's undertook the duty of following up on unsatisfactory inspection results, it was required to do so with ordinary care. According to appellants, Schlotzsky's was negligent in this regard and increased the risk that its patrons would become infected by Hepatitis A.

As a general rule of law we agree with appellants that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." (Citation and punctuation omitted.) *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 837 (331 SE2d 899) (1985). See also *Huggins v. Aetna Cas. &c. Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980) (adopting § 324A of the Restatement (Second) of Torts concerning liability to third persons for negligent undertaking of service). But we do not agree that testimony of Schlotzsky's executives, or any other evidence relied on by appellants, demonstrates that Schlotzsky's undertook the duty of insuring compliance with hygiene regulations following a violation to such an extent as to render it liable under a "negligent undertaking" theory. Lutz's testimony shows only that while training new franchisees, he emphasized the importance of good hygiene and encouraged the franchisees to more closely supervise those employees in violation of hand-washing policies. On cross-examination, he agreed that a franchisee should "[p]rovide additional training" to a violating employee and "initially supervise more closely to ensure it doesn't happen again." Significantly, however, he did not state that Schlotzsky's undertook a duty of making sure this additional training and supervision occurred.

Neither does the testimony of Schlotzsky's president demonstrate a policy of "following-up" on inspection reports to such an extent as to render Schlotzsky's liable under a negligent undertaking

theory. Wooley did indeed testify, as pointed out by appellants, that with respect to unacceptable inspection forms, Schlotzsky's practice is to "[e]ngage in a dialogue with the franchisee to understand what the problem is and see that improvement is made, and that deficiencies are corrected." In addition, we note the testimony of an employee of Quality Concepts, who stated that after an inspection occurs, the inspector sends the inspection results to Schlotzsky's, who undertakes the "follow-up" responsibility. But these statements do not show that Schlotzsky's undertook a duty to involve itself in the day-to-day operation of the restaurant or that it assumed the right to control the manner of executing the work in the restaurant. See *Schlotzsky's I*, supra at 888-889. Schlotzsky's was evaluating the restaurant's compliance with its standards, and a franchisor's reserving the right to do this "is *not* the equivalent of retaining day-to-day supervisory control of the franchisee's business operations as a matter of law." (Emphasis in original.) Id. at 890. Schlotzsky's acted in its role as a franchisor, upholding its commitment to "achieving a certain level of quality and uniformity with the Schlotzsky's system." (Citation and punctuation omitted.) Id.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 12, 2002.

*Cooper & Jones, Lance A. Cooper, Andrew W. Jones, Scott B. Cooper*, for appellants.

*Kilpatrick Stockton, Roderick C. Dennehy, Jr., Craig E. Bertschi, Gambrell & Stolz, Jennifer G. Cooper*, for appellee.