John Anthony WILLIAMS,
Jr., Plaintiff,

v.

JET ONE JETS, INC., Louis Ottimo, Anthony Ottimo, American Express Company, and American Express Incentive Services, L.L.C., Defendants.

Civil Action No. 1:08–cv–3737–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 19, 2010.

James Robert Fletcher, II, Michael Weinstock, Weinstock & Scavo, P.C., Atlanta, GA, for Plaintiff.

Matthew Nolan Foree, The Foree Law Firm, P.C., Marietta, GA, for Louis Ottimo and Jet One Jets, Inc.

Daniel K. Ryan, Peter E. Pederson, Hinshaw & Culbertson LLP, Chicago, IL,

Kenton Coppage, Smith Moore Leatherwood LLP, Atlanta, GA, for American Express Company and American Express Incentive Services, L.L.C.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

Before the Court is Defendants American Express Company ("AmEx") and American Express Incentive Services, L.L.C.'s ("AEIS") motion for summary judgment [82].[1]

### I. Background

AmEx is a New York corporation that provides, among other things, traveler's checks and plastic payment cards. AEIS, now known as InteliSpend Prepaid Solutions and formerly a joint venture between Maritz, Inc. and AmEx, provides payment products that merchants can resell to their customers. Defendant Jet One Jets, Inc. is a New York corporation that provided chartered flight services. Defendants Louis Ottimo and Anthony Ottimo were the president and chief executive officer, respectively, of Jet One, and 50/50 shareholders in the company.

On February 6, 2007, Jet One and AEIS entered into a reseller agreement, which provided that pre-denominated incentive funds cards could be made available for resale to Jet One's customers. Prior to entering into this agreement, AEIS verified that Jet One was a legitimate business with proper bank accounts. Jet One provided AEIS with proof that it maintained proper bank accounts and that it had established an anti-money laundering compliance program.

---

1. The Court hereby GRANTS AmEx and AEIS's motions for an extension of time to file their reply brief [97] and for leave to exceed the page limit in their reply brief [101].

Pursuant to the reseller agreement, when a customer paid Jet One for an incentive funds card, Jet One was supposed to send an order to AEIS for the issuance of a card and pay AEIS the face value of the card plus a fee. AEIS would then purchase a card in the designated amount from AmEx, send the money to AmEx, and cause the card to be forwarded to Jet One's customer. AEIS paid AmEx the face value of the card.

Jet One marketed the cards as the "AccessOne Card" program, and customers could only use the cards to make purchases from Jet One. AmEx and AEIS did not give Jet One a list of AmEx cardholders to assist Jet One in its marketing efforts or for any other purpose. The reseller agreement, however, did provide that Jet One could use AmEx's intellectual property, including the AmEx logo and Blue Box, subject to the branding guidelines appended to the agreement. For example, before publishing any advertisement for the AccessOne program that contained AmEx's intellectual property, Jet One was supposed to submit the advertisement to AEIS for its review and approval. AEIS would also refer the ad to AmEx so that its branding team could review and comment on it.

In late 2007, Plaintiff John Anthony Williams, Jr.'s father wanted to buy Williams a prepaid card that he could use to purchase chartered flights as a Christmas or birthday gift. In November 2007, Jodi Willoughby, the secretary to Williams's father, spoke with R.J. LaSasso, a salesman employed by Jet One. LaSasso was an employee of Jet One, and his email address contained the "jetonejets.com" domain name. He did not represent to Williams that he was an employee of AEIS or AmEx.

On November 7, 2007, LaSasso emailed Willoughby several documents, including a Jet One marketing brochure and the AccessOne Purchase Agreement. Williams was introduced to Jet One when Willoughby sent him the documents and told him to look into Jet One's program. Williams testified that before he decided to purchase an AccessOne card, he communicated by phone or email with LaSasso, possibly both Ottimos, and an employee in Jet One's New York office. Williams also reviewed the marketing brochure, the purchase agreement, Jet One's website, and other Jet One ads.

On December 12, 2007, Williams signed a purchase agreement with Jet One for an AccessOne card. On December 14, his father's bank wired $150,000 to Jet One's account. Williams alleges that Jet One gave him a $10,000 sign-up bonus and thus the initial balance of his account was $160,000. When Williams signed the purchase agreement, he believed that Jet One could enter into agreements that were binding on AmEx and AEIS. However, he admits that he did not communicate with AmEx or AEIS representatives prior to signing the agreement and that the agreement does not designate Jet One as an agent of AmEx or AEIS.

Moreover, the agreement does not provide that AmEx and AEIS (1) are parties to the contract, (2) guarantee Jet One's obligations, (3) would supervise Jet One's handling of funds paid for AccessOne cards, or (4) would monitor, supervise or control Jet One's performance of services for Williams or its day-to-day operations. Williams also cannot identify any actions that AmEx or AEIS took to market the card or to endorse Jet One to him, and he admits that he did not enter into an agreement in which AmEx or AEIS guaranteed the obligations of Jet One. Williams also admits that AmEx and AEIS did not create confusion about who was providing the flight services that Jet One was supposed

to provide under the agreement. In fact, AmEx and AEIS were not aware that Williams had entered into an agreement with Jet One until Williams filed suit against them.

In February 2008, Jet One chartered a flight for Williams from Atlanta, Georgia to St. Thomas. The flight cost $50,631.25, thereby reducing Williams's balance to $109,368.75. Williams claims that after he took this one flight, Jet One failed to provide other flights and refused to refund the balance of his account. Williams avers that for one of the flights that Jet One failed to provide, his father had to pay for a replacement flight that cost $8,561 more than the Jet One quote for the same flight. Williams also alleges that he never received an AccessOne card and that Jet One failed to send his father's payment for the card to AEIS or AmEx.

In or around July 2008, Jet One ceased doing business. On October 3, 2008, AEIS terminated the reseller agreement without cause.

In October 2008, Williams filed suit against the Ottimos, Jet One and AmEx in the Superior Court of Fulton County. AmEx timely removed the action to this Court. On August 21, 2009, AEIS was added as a defendant [36], and on August 31, Williams filed his amended complaint [38], in which he asserts claims against AmEx and AEIS for negligence, vicarious liability, violation of the Fair Business Practices Act, attorneys' fees and punitive damages.

On September 20, 2010, AmEx and AEIS filed a motion for summary judgment on all of Williams's claims against them [82].

## II. Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.*

## III. Negligence Claim

Williams avers that AmEx and AEIS had a duty to exercise ordinary care when selecting Jet One as a merchant authorized to use, market, sell or advertise a card with the AmEx brand or logo and a duty to monitor Jet One's business. He contends that AmEx and AEIS breached these duties when they failed to adequately research Jet One prior to entering into the reseller agreement and to monitor Jet One thereafter when it advertised and sold the AccessOne card with the AmEx brand or logo. As a result of these alleged

breaches of the duty of care owed him by AmEx and AEIS, Williams avers that his damages suffered are the balance remaining on the card, the extra cost to find a replacement flight to Mexico, and other general, incidental and consequential damages.

AmEx and AEIS respond that they did not have a duty to ensure that Jet One fulfilled its obligations to Williams, and that the economic loss rule bars Williams's negligence claim.[2]

■ To establish his negligence claim, Williams must show "(1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to [his] legally protected interest." *Womack v. Oasis Goodtime Emporium I, Inc.*, 307 Ga.App. 323, 705 S.E.2d 199, 2010 WL 4261472, at *4 (Ga.Ct.App. Oct. 29, 2010).

■ Without citing any case law or statute to support his claim, Williams summarily asserts that AmEx and AEIS owed him a duty of care because they impliedly endorsed Jet One and then did nothing to ensure that Jet One did not use the AmEx mark to steal his money. Defendants respond that these facts do not create a legal duty and that they are not liable in tort for the conduct of a third party merely because they allowed Jet One to sell a payment card that bore the AmEx logo. The Court agrees.

■ "[B]efore a defendant can be held liable for negligence, 'some duty to the individual complaining must be sought and found, the observance of which duty would

have averted or avoided the injury or damage.'" *Lilliston v. Regions Bank*, 288 Ga. App. 241, 243–44, 653 S.E.2d 306, 309 (2007) (quoting *City of Douglasville v. Queen*, 270 Ga. 770, 771, 514 S.E.2d 195, 197 (1999)). "Whether a duty exists upon which liability can be based is a question of law." *Lilliston*, 288 Ga.App. at 244, 653 S.E.2d at 309.

Williams avers that AmEx and AEIS owed him a duty as a result of the reseller agreement. In evaluating this argument, Williams has not proffered and the Court has not independently found any case law that addresses the facts of this case. In their briefs, AmEx and AEIS, for the most part, rely on franchisor case law, and in his response, Williams does not object to their use of this law. The Court finds that franchisor/franchisee relationship is analogous to the relationship among Jet One, AEIS and AmEx created by the reseller agreement and thus applies franchisor law in its analysis.

Applying this law, the Court finds that AmEx and AEIS did not owe an affirmative duty to Williams as a result of the reseller agreement or independent of that agreement. In *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga.App. 38, 668 S.E.2d 737 (2008), the court held that a dealership agreement between a car manufacturer and the local dealer did not impose a duty on the manufacturer that would support a consumer's negligence claim. In reaching this conclusion, the court found that the agreement did not impose an "affirmative duty upon [the manufacturer] to police [the local dealer's] business practices and terminate the Agreement upon learning of [the local

---

**2.** Because the Court finds that AmEx and AEIS did not owe a duty of care to Williams, thus defeating his negligence claim, the Court does not address AmEx and AEIS's economic loss rule defense.

dealer's] default." *Id.* at 49, 668 S.E.2d at 748.

Similarly, the reseller agreement between AEIS and Jet One did not impose an affirmative duty upon AEIS or AmEx to police Jet One's business practices and terminate the agreement if Jet One defaulted. Thus, the reseller agreement does not support Williams's negligence claim against AEIS and AmEx.

The *Clemente* court also held that even if the agreement did impose a duty on the manufacturer to police the local dealer and terminate the agreement, "that alone still would be insufficient to support [the consumer's] negligence claim." *Id.* at 50, 668 S.E.2d at 748. It reasoned that "a defendant's breach of contract may give rise to a tort ... only if the defendant has also breached an independent duty created by statute or common law." *Id.* As the consumer had failed to point to an independent duty created by statute or common law, her negligence claim against the manufacturer failed. Likewise, Williams has failed to show that there exists an independent duty to support his negligence claim, even if the reseller agreement did impose on AmEx or AEIS a duty to police Jet One. Indeed, Williams does not cite one case or statute to support his contention that AmEx and AEIS owed him a duty of care.

Accordingly, the Court finds that the reseller agreement did not impose an affirmative duty upon AmEx and AEIS on behalf of consumers. Nor has Williams pointed to an independent duty created by statute or common law owed by AEIS and AmEx to him. Thus, Williams's negligence claim fails as a matter of law.

## IV. Vicarious Liability

In his complaint, Williams alleges that AmEx and AEIS are vicariously liable for Jet One's conduct because Jet One was their actual or apparent agent. AmEx and AEIS respond that Jet One was not their actual agent, as they did not have the right to control the time, manner and method of Jet One's work, nor their apparent agent, as they did not hold Jet One out as their agent.

■ In order to prove that Jet One was AmEx and AEIS's actual agent, Williams must show that they controlled the time, manner and method of Jet One's day-to-day operations. *Clemente,* 294 Ga.App. at 44, 668 S.E.2d at 745. "The historical test applied by [Georgia] courts ... to determine whether an agency relationship exists is whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract." *Pizza K, Inc. v. Santagata,* 249 Ga.App. 36, 37, 547 S.E.2d 405, 406 (2001).

When applying this test, the Court must be mindful of the special relationship created by the reseller agreement, for AmEx and AEIS must exercise sufficient control over Jet One to protect AmEx's national identity and professional reputation while at the same time relinquishing enough control to prevent them from being vicariously liable for the acts of Jet One and the Ottimos. *Id.* In light of this special relationship, AmEx and AEIS may protect AmEx's name and reputation through the reseller agreement by setting detailed, specific and strict standards of conduct, authorizing periodic inspections of Jet One, and giving AEIS the right to terminate the agreement for noncompliance, all without establishing an agency relationship. *Clemente,* 294 Ga.App. at 45, 668 S.E.2d at 745. The reseller agreement only establishes an agency relationship with Jet One if it gives AmEx or AEIS "supervisory

control over the day-to-day activities of [Jet One]." *Id.*, 668 S.E.2d at 745–46.

■ Looking to the reseller agreement, it does control Jet One's use of the AmEx brand and establish criteria for the transfer of funds once a cardmember has signed a purchase agreement. However, nothing in the reseller agreement gives AEIS or AmEx control over Jet One's day-to-day operations. Indeed, Louis Ottimo testified that AmEx and AEIS did not have control over Jet One's daily operations and did not tell Jet One how to provide its jetting services.

Williams responds that "Defendants' argument that they did not purport to control the later provisioning of jet services or other [ ]day-to-day services misses the point." But it is Williams who misses the point. In an agency relationship, whether a principal has control over day-to-day operations is precisely what matters. *See McGuire v. Radisson Hotels Int'l, Inc.*, 209 Ga.App. 740, 742, 435 S.E.2d 51, 53 (1993) (distinguishing between a principal's actions controlling the time and manner of an agent's work from a franchisor's actions enforcing a franchisee's conformity with the contract); *accord Clemente*, 294 Ga. App. at 45, 668 S.E.2d at 745–46 (finding no agency relationship where the agreement did not contain provisions giving the manufacturer control over the day-to-day activities of the dealer).

The reseller agreement does not provide AEIS or AmEx with control over Jet One's day-to-day operations, and Jet One's president, Louis Ottimo, testified that in fact AmEx and AEIS did not exert control over Jet One's daily operations. More importantly, in his own statement of facts, Williams states that "Louis and Anthony Ottimo were the two executives of Jet One, and had control over Jet One's day-to-day operations." Accordingly, the Court finds that Jet One was not the actual agent of AmEx and AEIS.

■ Williams's argument that AmEx and AEIS are liable under an apparent agency theory also fails. To establish that Jet One was AmEx's or AEIS's apparent agent, Williams must show that (1) AmEx or AEIS held out Jet One as AmEx's agent; (2) he justifiably relied on the care or skill of Jet One, the alleged agent, based upon AmEx's or AEIS's representations; and (3) his justifiable reliance led to his injury. *Fountainhead Dev. Corp. v. Dailey*, 263 Ga.App. 677, 679, 588 S.E.2d 768, 771 (2003). "It is not enough that plaintiff simply believe there is an agency relationship. There is an objective standard. The apparent principal must represent or hold out the apparent agent." *McGuire*, 209 Ga.App. at 743, 435 S.E.2d at 53.

Williams avers that he believed that Jet One was AmEx's agent as a result of statements by Jet One's employees, the Jet One website, the marketing brochure, and the purchase agreement. Williams's focus on Jet One's actions, though, is misplaced, as apparent agency theory focuses on the actions of AmEx, the alleged principal, rather than Jet One, the alleged agent. "The conduct of the agent alone cannot bind the principal. The principal must act in such a manner as to legitimate the agent's charade of authority." *Synergy Worldwide, Inc. v. Long, Haymes, Carr, Inc.;* 44 F.Supp.2d 1348, 1355 (N.D.Ga. 1998). Williams testified that no representative of AmEx or AEIS made a statement, verbally or in writing, that caused him to believe that Jet One was their agent. Consequently, Williams cannot show that Jet One was the apparent agent of AmEx and AEIS. As Williams cannot show that Jet One was AmEx and AEIS's actual or apparent agency, his vicarious liability claim fails as a matter of law.

## V.  Fair Business Practices Act

Williams avers that AmEx and AEIS violated the Georgia Fair Business Practices Act ("FBPA"), specifically O.C.G.A. § 10–1–393(b)(1–3, 5), because AmEx did not to hold his funds on deposit, was not a source of the AccessOne card, was not to provide services to him, and was not certifying or affiliated with Jet One, but had represented otherwise to consumers.

AmEx and AEIS respond that they did not make statements that misrepresented or created confusion about the card to Williams; Williams did not rely on any confusion they created since they did not communicate with him about the card; and the public was not affected by Jet One's conduct because the facts involve a private transaction.

■ One may bring a private suit under the FBPA, O.C.G.A. § 10–1–390 *et seq.,* if he is individually injured by the breach of a duty owed to the consuming public in general. *Zeeman v. Black,* 156 Ga.App. 82, 84–85, 273 S.E.2d 910, 914–15 (1980). The right to recover under the FBPA is a cause of action separate and distinct from any other theory of recovery. *Id.* at 82, 273 S.E.2d at 913.

■ To prevail on an FBPA claim, the claimant must prove three elements: a violation of the act, causation and injury. *Tiismann v. Linda Martin Homes Corp.,* 281 Ga. 137, 139, 637 S.E.2d 14, 17 (2006). "[T]he measure of damages to be applied for an FBPA violation is that of actual injury suffered. 'Actual damages,' for purposes of the FBPA, means relief other than the refund of the purchase price and restitution." *Small v. Savannah Int'l Motors, Inc.,* 275 Ga.App. 12, 15–16, 619 S.E.2d 738, 743 (2005).

Williams fails to respond to AmEx and AEIS's arguments that his FBPA claim fails as a matter of law. In his brief in opposition to AmEx and AEIS's motion, Williams lists in bullet form five facts that he contends show that AmEx and AEIS violated the FBPA, but he fails to show how these facts are material or how they create a genuine issue of material fact. Indeed, AmEx and AEIS in their reply brief show how Williams's facts are not supported by the record. Williams also fails to provide any case law in support of his argument that AmEx and AEIS have violated the FBPA.

■ Most importantly, though, Williams does not address his admission that AmEx and AEIS made no statements verbally or in writing to him prior to him signing the Jet One purchase agreement. This admission alone is fatal to his FBPA claim. In *Tookes v. Murray,* 297 Ga.App. 765, 767, 678 S.E.2d 209, 212 (2009), the plaintiff contended that the defendant, his dentist, was complicit in arranging the plaintiff's entry into a deceptive financing arranging with Capital One for his dental treatment and thus the dentist had violated the FBPA. The dentist, however, presented undisputed evidence that he never spoke or had any involvement with the plaintiff about the plaintiff's financing of his dental work in general or his loan arrangement with Capital One.

The plaintiff attempted to rebut the dentist's evidence with parol evidence that an unnamed member of the dentist's staff had told him that the interest rate would be lower. The court found the evidence "inadmissible to contradict the clear written provisions of the financing authorization, which [the plaintiff] signed...." *Id.* As a result, the court dismissed the FBPA claim because the plaintiff had "failed to come forward with any evidence that [the dentist] employed unfair or deceptive acts to coerce him into entering the financing arrangement with Capital One." *Id.*

Similarly, Williams admits that he did not speak with representatives from AmEx or AEIS prior to signing the purchase agreement. The agreement clearly shows that Jet One and Williams are the only parties to the agreement, Williams would deal with Jet One in arranging for flights and payment, and AmEx and AEIS made no promises to Williams. Consequently, Williams's parol evidence that AmEx was going to hold the funds in deposit for him and fulfill other promises to him is not admissible. As a result, Williams has failed to show that AmEx and AEIS employed unfair or deceptive acts, and his FBPA claim fails as a matter of law. *See also Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 140, 637 S.E.2d 14, 18 (finding that plaintiff's FBPA claim failed because nothing was withheld from or falsely stated to him by the defendant, and the allegedly deceptive provisions were in the agreement and available for him to read and accept or reject prior to signing).

## VI. Punitive Damages and Attorneys' Fees

In his amended complaint, Williams seeks punitive damages and attorneys' fees. However, the Court's disposition of AmEx and AEIS's motion for summary judgment precludes Williams from succeeding on either claim.

■ "[P]unitive damages under O.C.G.A. § 51–12–5.1 cannot be awarded where no actual damages are awarded." *Morris v. Pugmire Lincoln Mercury, Inc.*, 283 Ga.App. 238, 241, 641 S.E.2d 222, 225 (2007); *accord OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1357 n. 8 (11th Cir.2008). This rule applies here, as Williams's underlying claims

against AmEx and AEIS fail, resulting in no actual damages being awarded.

■ In addition, a "prerequisite to any award of attorney fees under O.C.GA. § 13–6–11 is the award of damages or other relief on the underlying claim." *Morris*, 283 Ga.App. at 241, 641 S.E.2d at 225 (citing *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147, 475 S.E.2d 601, 602 (1996)). The Court's grant of summary judgment to AmEx and AEIS on Williams's underlying claims precludes any recovery by Williams of his attorneys' fees pursuant to O.C.G.A. § 13–6–11.

## VII. AmEx's Crossclaim for Contribution and Indemnity Against Jet One, Louis Ottimo and Anthony Ottimo

On July 24, 2009, AmEx filed a crossclaim for contribution and indemnity against Jet One, Louis Ottimo and Anthony Ottimo ("crossclaim Defendants") [29]. In count one, AmEx avers that crossclaim Defendants have an implied duty of indemnification that requires them to indemnify AmEx for the costs and attorneys' fees it incurs in defending this suit.[3] In count two, AmEx claims that to the extent it is held liable to Williams, crossclaim Defendants have a duty to contribute any monies AmEx pays to defend Williams's claims, to settle Williams's claims, and to satisfy any judgment entered in favor of Williams.

In light of the Court's rulings in this Order and in the order on Louis Ottimo's motion for summary judgment, AmEx is hereby ORDERED to either dismiss its crossclaim or file a motion for summary judgment on this crossclaim on or before December 7, 2010. If AmEx files a motion for summary judgment, the Court is not

---

**3.** On November 19, 2009, the Court denied crossclaim Defendants' motion to dismiss count one of AmEx's crossclaim [67].

inclined to grant a page extension for the accompanying brief.

## VIII. Conclusion

AmEx and AEIS's motions for summary judgment [82], for an extension of time to file their reply brief [97] and for leave to exceed the page limit [101] are GRANTED.