# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DANIELLE TETTEH, Individually )
and as Administrator of the Estate )
of DANIEL L. JONES, deceased, )
                                         )
            Plaintiff, )
                                           )
      v. )               C.A. No. N14C-08-023 ASB
                                           )
ALCATEL-LUCENT USA, INC., )
et al., )
                                         )
            Defendants. )

## MEMORANDUM OPINION AND ORDER

Submitted: August 25, 2016
Decided: August 31, 2016

*Upon Consideration of Defendant's Motion for
Summary Judgment,* **GRANTED.**

Beverly L. Bove, Esquire, Law Office of Beverly L. Bove, Wilmington, Delaware, and Jackalyn A. Olinger, Esquire, Maune, Raichle, Hartley, French & Mudd LLC, St. Louis, MO. *Attorneys for Plaintiffs.*

John C. Phillips, Jr., Esquire, Phillips, Goldman & Spence, P.A., Wilmington, Delaware. *Attorney for Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

Daniel Jones was an employee of Western Electric Company. Defendant AT&T Corp. is the former corporate parent of Western Electric Company. Plaintiff Danielle Tetteh, individually and as administrator of the Estate of Daniel Jones, seeks to hold AT&T liable under the Restatement (Second) of Torts, § 324A, for Daniel Jones' alleged asbestos-related work injury. AT&T moves for summary judgment. Having considered all pleadings and lengthy oral arguments heard on August 25, 2016, for the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED.**

## FACTS AND PROCEDURAL BACKGROUND

Daniel Jones ("Jones") was employed by Western Electric Company ("WECO") from approximately 1973 to 1989, at WECO's Norcross, Georgia, cable and wiring manufacturing plant.[1] During the relevant time period, WECO was a wholly-owned subsidiary of Defendant AT&T Corp. ("AT&T" or "Defendant").[2] WECO manufactured and/or supplied the equipment used by the local Bell Operating Companies and AT&T's Long Lines division to provide

---

[1] Daniel Jones' Social Security Admin. Earnings Record Info. at 6, Ex. 3 to Pl.'s Am. Mem. Opp'n.

[2] Ralph V. Collipi, Jr.'s Aug. 24, 2015 Aff. ¶ 3, Ex. 1 to Def.'s Mot. Summ. J.

telephone service throughout the United States, and was among the nation's largest manufacturing companies.[3]

There is no evidence that Jones was at any time supervised by or reported to any AT&T personnel. WECO had its own Safety and Medical Departments, which coordinated WECO's occupational health program and employed hundreds of safety personnel;[4] this included dozens of industrial hygienists that reported to a Director of Industrial Hygiene.[5] In contrast, AT&T's Safety Department consisted of two people, neither of whom was an industrial hygienist.[6] At all relevant times, WECO was, and viewed itself as, responsible for the workplace safety of its own employees and implementation of its safety program, and did not delegate or surrender that responsibility to AT&T, its corporate parent.[7]

Notably, WECO's Medical Department "published policy guidelines that required local evaluation and implementation by the health and safety professionals at each Western Electric manufacturing plant."[8] While AT&T

---

[3] *Id.* ¶¶ 3–4.

[4] *Id.* ¶¶ 5–6, 8, 12, 18–19.

[5] *Id.* ¶¶ 6, 10, 12, 18–19.

[6] *Id.* ¶ 19.

[7] *Id.* ¶ 20.

[8] *Id.* ¶ 7.

provided safety-related recommendations and guidance to its subsidiaries, AT&T did not operate its subsidiaries' businesses or supplant their safety programs.

While employed by WECO, Jones worked in the Stranders, Final Test, Scrapers, and Tool Cleaning departments, and drove a forklift. Jones allegedly inhaled, ingested and otherwise absorbed asbestos-containing fibers emanating from various products, including fiber optic cables, switches, insulation, sheathing, wiring, lathes, asbestos cloth, floor tile, pipe insulation, talc and pulp.[9] Jones also used "heat gloves" when cleaning tools at WECO's Norcross plant.[10]

Jones was diagnosed with mesothelioma. He received benefits pursuant to Georgia's Worker's Compensation statute. Jones died on August 18, 2012.[11]

Plaintiff Danielle Tetteh ("Plaintiff"), individually and as administrator of the Estate of Daniel Jones, filed a Complaint on August 4, 2014. She seeks to hold AT&T liable under the Restatement (Second) of Torts, § 324A, for Jones' work-place injury, allegedly caused by exposure to asbestos.[12] Specifically, Plaintiff alleges that AT&T undertook to provide services to WECO and negligently

---

[9] Compl. ¶ 3(a).

[10] Larry K. Walker's Apr. 22, 2015 Dep. at 117:6–17, Ex. 4 to Pl.'s Am. Mem. Opp'n.

[11] Compl. ¶ 8.

[12] *Id.* ¶ 50.

performed those services, thereby causing Jones to develop mesothelioma.[13]

AT&T argues there is no basis under Georgia law to support this legal theory.

AT&T filed their Motion for Summary Judgment and Memorandum in Support Thereof approximately one year ago, on August 27, 2015. Plaintiff's Memorandum in Opposition was filed on September 18, 2015, and an amended version was filed on September 21, 2015. AT&T's Reply was filed on October 12, 2015. AT&T's motion was originally scheduled to be heard in March 2016. Both parties admitted responsibility for the various continuances that have occurred in the last year.

Oral arguments on AT&T's motion were heard on August 25, 2016. At oral arguments, Plaintiff requested an extension of the discovery deadline in order to have more time to take the deposition of a witness.[14] The Court denied Plaintiff's request. After the Court also indicated it would not be ruling from the bench, AT&T expressed some concern with time constraints, as the case is currently scheduled with the October 2016 trial group. AT&T therefore sought to move the trial date, which Plaintiff opposed. The Court denied AT&T's request. Accordingly, the matter is ripe for review.

---

[13] *Id.* ¶¶ 44–72.

[14] Defendant's Motion for Summary Judgment and Memorandum in Support Thereof was filed August 27, 2015. Until oral arguments on August 25, 2016, no request was made by Plaintiff's counsel to address any discovery issues, nor did counsel provide anything to this Court to address any failure on the part of AT&T to make witnesses available for depositions.

## STANDARD OF REVIEW

Superior Court Civil Rule 56 mandates the granting of summary judgment upon a showing by the movant that "there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law."[15] "Once the movant meets its burden, then the burden shifts to the non-movant to demonstrate sufficiently an existence of one or more genuine issues of material fact."[16] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[17] In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[18] However, courts should not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[19]

---

[15] Super. Ct. Civ. R. 56(c).

[16] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488 (Del. 1995). *See also Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979); Super. Ct. Civ. R. 56(e).

[17] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

[18] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986).

[19] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986) *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

## ANALYSIS

The parties agree that Georgia law controls. Both sides also agree that there is little Georgia case law that addresses the application of § 324A of the Restatement (Second) of Torts as alleged here—i.e., whether a parent corporation assumed the duties that its subsidiary owed to the subsidiary's employees and then negligently breached/performed those duties. While it is unclear if Plaintiff's motive here is to circumvent the exclusive remedy bar under Georgia's Worker's Compensation statutory scheme, the question before this Court is whether § 324A can be used to impose a new duty on a parent company. Especially where there is no precedent under Georgia law to support Plaintiff's theory, and on this record, the answer must be no.

"The existence of a legal duty is a question of law for the court."[20] The issue is therefore appropriately considered at the summary judgment stage.[21] Plaintiff argues that § 324A—Liability to Third Person for Negligent Performance of Undertaking—applies to the facts of this case. This Court disagrees.

---

[20] *Garner And Glover Co. v. Barrett*, 738 S.E.2d 721, 723 (Ga. Ct. App. 2013) (quoting *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011)).

[21] *See Rasnick*, 713 S.E.2d 835 (affirming summary judgment ruling that no duty existed). *See also Garner And Glover Co.*, 738 S.E.2d 721 (reversing denial of summary judgment regarding assumption of duty); *Hyde v. Schlotzsky's, Inc.*, 561 S.E.2d 876 (Ga. Ct. App. 2002) (affirming summary judgment ruling that no duty was assumed).

The Restatement (Second) of Torts, § 324A has been adopted in Georgia[22] and provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[23]

"Section 324A of the Restatement will not support a cause of action based on the theory that a party who did not undertake to render services *should have done so.*"[24] The failure to act is not an undertaking, as asserted by Plaintiff; rather, there must be an affirmative act.[25] Liability is imposed pursuant to § 324A "only where a party has in fact undertaken to render services. It does not impose liability

---

[22] *Huggins v. Aetna Cas. & Sur. Co.*, 264 S.E.2d 191, 192 (Ga. 1980) [hereinafter *Huggins I*].

[23] Restatement (Second) of Torts § 324A (1965).

[24] *Davenport v. Cummins Alabama, Inc.*, 644 S.E.2d 503, 509 (Ga. Ct. App. 2007). *See also Finley v. Lehman*, 463 S.E.2d 709, 710 (Ga. Ct. App. 1995) (no liability where defendant did not "render any services to decedent's employer which he should have recognized as necessary for the protection of [decedent].").

[25] *Davenport*, 644 S.E.2d at 509.

based upon the failure to render services which should have been undertaken."[26] Therefore, the first step is to determine if AT&T has undertaken to render services.

AT&T acknowledges that its role and relationship with WECO was that, as a parent company, it provided safety-related recommendations and guidance to this subsidiary. It maintains that it did not operate its subsidiaries' businesses or supplant their safety programs, and characterizes its actions as "normal and ordinary activities of a corporate parent."[27]

Plaintiff's response in the briefs and during oral argument was replete with references to the relationship of Jones and/or AT&T to "Bell Systems" and "Bell Laboratories,"[28] and a belief that had Plaintiff been able to take a discovery deposition of a material witness, the connection for purposes of imputing liability on AT&T could be established.[29] Jones was an employee of WECO. He received worker's compensation benefits from WECO. On this record, Plaintiff fails to adequately describe any connection between Jones and Bell Systems or Laboratories.

More importantly, even if Plaintiff's connection to AT&T/Bell/WECO could be established, Plaintiff fails to demonstrate that AT&T agreed to "render services"

---

[26] *Finley*, 463 S.E.2d at 710 (citation omitted).

[27] Def.'s Mot. Summ. J. at 1.

[28] It is unclear from the record if these are legally recognized corporate entities.

[29] *See supra* note 14 and accompanying text.

to WECO for Jones' safety and then performed those services negligently. As such, Plaintiff fails to show how AT&T, as a corporate parent, assumed a duty for the safety of WECO's employees, including Jones.

It is not sufficient to claim that the provision of recommendations or guidance to its subsidiaries regarding workplace safety is the same as "rendering services" such that AT&T has assumed a duty for their safety under § 324A. The record is clear that Jones' employer, WECO, controlled and was responsible for the workplace safety of its own employees and did not surrender that responsibility to AT&T as its parent corporation.

The Court relies, in part, on *Hyde v. Schlotzky*, where the Georgia Court of Appeals held that the provision of minimum standards did not constitute assumption of the duty by the franchisor under § 324A.[30] Albeit in the context of a franchisor/franchisee relationship as it related to standards regarding cleanliness, periodic inspections and evaluations of compliance with those standards, important to the *Hyde* analysis was the court's consideration of what involvement the franchisor had in the day-to-day operations of the franchisee's business.[31]

---

[30] 561 S.E.2d at 878 ("[W]e do not agree that testimony of [defendant's] executives, or any other evidence relied on by appellants, demonstrates that [defendant] undertook the duty of insuring compliance with hygiene regulations following a violation to such an extent as to render it liable under a "negligent undertaking" theory.").

[31] *Id.* (finding evidence did not "show that [defendant] undertook a duty to involve itself in the day-to-day operation of the restaurant or that it assumed the right to control the manner of executing the work in the restaurant.").

9

Just as in *Hyde*, and under Georgia law, there is no evidence that AT&T controlled the day-to-day-operations of the plant where Jones worked. To the contrary, even Plaintiff's witnesses, Jones' co-workers, testified that *WECO was responsible* for the safety program and managed the safety of its employees. This is evidenced by the fact that they had sizeable Safety and Medical Departments, with dozens of industrial hygienists on staff; AT&T's Safety Department consisted of two employees and neither were hygienists.

Even if the evidence supported a finding that AT&T undertook such a duty, "a voluntary undertaking amounts to liability only if one or more of the additional requirements stated in § 324A is satisfied."[32] Plaintiff fails to meet any of the three additional requirements under § 324A(a), (b) or (c).

As to subsection (a), "Georgia courts have consistently held that this subsection is applicable only 'when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed.'"[33] Section 324A(a) "applies only in those situations where the actor's negligent performance of his duty or undertaking exposes the injured person to a greater risk of harm than had existed previously."[34] In other words, "the mere

---

[32] *Maier v. Green Eyes USA, Inc.*, 2011 WL 4625979, at *3 (S.D. Ga. Sept. 30, 2011).

[33] *Id.* (quoting *BP Expl. & Oil, Inc. v. Jones*, 558 S.E.2d 398, 405 (Ga. Ct. App. 2001)).

[34] *Huggins v. Standard Fire Ins. Co.*, 304 S.E.2d 397, 398 (Ga. Ct. App. 1983) [hereinafter *Huggins II*].

failure to abate a hazardous condition—without making it worse—does not trigger the application of Section 324A(a)."[35] A plaintiff must produce "evidence that [the defendant] affirmatively increased the risk of harm."[36]

Plaintiff concedes that the claims are not alleged under subsection (a). Moreover, there is no evidence suggesting that any safety recommendations or guidance AT&T may have provided to WECO somehow transformed a nonhazardous condition at the Norcross plant into a hazardous condition, or exposed Jones to a greater risk of harm than that which previously existed. This Court therefore finds that Plaintiff fails to establish her claim under subsection (a), as there is no evidence that AT&T affirmatively increased the risk of harm to Jones.

As to subsection (b), the subsection is limited to "those situations where the alleged tortfeasor's performance is to be substituted completely for that of the party on whose behalf the undertaking is carried out."[37] "Even where the negligence of the actor does not create any new risk or increase an existing one, he is still subject to liability if, by his undertaking with the other, he has undertaken a duty which the

---

[35] *Herrington v. Deloris Gaulden*, 751 S.E.2d 813, 816 (Ga. 2013).

[36] *Id.*

[37] *Huggins II*, 304 S.E.2d at 398.

11

other owes to the third person."[38] A plaintiff must establish that the defendant "completely undertook to perform duties," such as "maintaining safe equipment and preventing injuries," that were "originally owed by [p]laintiff's employer."[39]

WECO recognized its continuing duty to ensure the health and safety of its employees; its Medical Department published policy guidelines for local implementation at each WECO plant.[40] These publications included guidelines "regarding the identification and control of potential asbestos exposures" at WECO.[41] Each WECO plant, including the Norcross plant at which Jones worked, had a Medical Director who oversaw implementation of medical programs at the particular plant.[42] Notably, health and safety issues were not even managed from WECO's New York City headquarters, but rather, they "had to be *managed on-site*" because the manufacturing processes varied across the plants.[43] Each WECO plant also employed a group of industrial hygienists, who were tasked with identifying and investigating potential hazards at their particular plant.[44] This

---

[38] Restatement (Second) of Torts § 324A, cmt. d (1965).

[39] *Martinez v. Rycars Const., LLC*, 2011 WL 4625989, at *10 (S.D. Ga. Sept. 30, 2011).

[40] Ralph V. Collipi, Jr.'s Aug. 24, 2015 Aff. ¶ 7, Ex. 1 to Def.'s Mot. Summ. J.

[41] *Id.*

[42] *Id.* ¶ 8.

[43] *Id.* (emphasis added).

[44] *Id.* ¶ 11.

Court therefore finds that Plaintiff fails to establish her claim under subsection (b), as there is no evidence that AT&T completely undertook to perform the workplace health and safety duties that WECO owed to its employees.

As to subsection (c), a plaintiff must show that the defendant "realized his undertaking to render services . . . was necessary for [p]laintiff's protection" and the plaintiff "or his employer relied upon [d]efendant's competent performance of the undertaking to provide for his safety."[45] "Under Georgia law, reliance under § 324A(c) must be shown by a 'change in position.' This required change in position can be satisfied by evidence that 'the employer had neglected or reduced its own safety program because of [the defendant's] efforts.'"[46] Section 324A(c) "requires proof of actual reliance by either the employee or the employer on the [defendant's] undertaking. In addition, of course, it must be shown that such reliance was the proximate cause of the employee's injuries."[47] "Georgia law allows a jury to draw this conclusion based on circumstantial evidence."[48]

There is no evidence in this record that there was a change in position by WECO such that WECO neglected or reduced its safety program because of any of the recommendations that were provided by AT&T. Again, WECO had its own

---

[45] *Martinez*, 2011 WL 4625989, at *10.

[46] *Maier*, 2011 WL 4625979, at *7 (citations omitted).

[47] *Huggins II*, 304 S.E.2d at 398.

[48] *Maier*, 2011 WL 4625979, at *7.

Safety and Medical Departments[49] and every WECO plant had a team of industrial hygienists tasked with identifying and investigating hazards.[50] While WECO had dozens of industrial hygienists, AT&T's Safety Department had no industrial hygienists on staff.[51] WECO also had annual meetings for its industrial hygiene staff where they would discuss issues arising within WECO's manufacturing plants.[52] Plaintiff fails to establish her claim under subsection (c), as there is no evidence that WECO or Jones actually relied on AT&T's recommendations.

In sum, Plaintiff cannot demonstrate that AT&T assumed a duty of care otherwise owed by Mr. Jones' employer (WECO). Even if this could be established, by the connections Plaintiff attempted to prove through references to "Bell" or otherwise, Plaintiff fails to demonstrate that AT&T negligently performed or breached that duty. There is no evidence that any breach or negligent performance of an alleged duty by AT&T somehow increased the risk of harm to Jones, or that AT&T completely substituted and undertook a duty that WECO owed to Jones, or that WECO actually relied on any alleged undertaking by AT&T.

---

[49] Ralph V. Collipi, Jr.'s Aug. 24, 2015 Aff. ¶¶ 5, 12, Ex. 1 to Def.'s Mot. Summ. J.

[50] *Id.* ¶ 11.

[51] *Id.* ¶ 19.

[52] *Id.* ¶ 17.

## CONCLUSION

Plaintiff fails to provide any evidence creating a genuine issue of material fact with respect to whether AT&T could be held liable for Jones' work-place injury based on the "negligent performance of an undertaking" under § 324A of the Restatement (Second) of Torts. AT&T did not undertake to render services to WECO which it should have recognized as necessary for the protection of WECO's employees, including Jones. Because Plaintiff has not presented evidence from which a jury could reasonably infer, without undue speculation, that AT&T assumed, and then negligently breached, WECO's duty to Jones while he was working for WECO, summary judgment is **GRANTED** in favor of Defendant AT&T Corp.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc: Prothonotary

cc: All Counsel on Record (via e-filing)

15